**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 25-CR-80093-DMM**

**UNITED STATES OF AMERICA**

**vs.**

**JASEN BUTLER,**

      **Defendant.**

_____/

## UNITED STATES' MOTION TO EXCLUDE PROPOSED DEFENSE EXPERT

The United States of America, through undersigned counsel, moves to exclude Defendant's proposed expert witness, law professor Christopher Yukins, because his testimony would be irrelevant and unfairly prejudicial under Federal Rules of Evidence 401, 402, and 403. The proposed testimony fails the tests of *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) and *United States v. Frazier*, 387 F.3d 1244, 1272 (11th Cir. 2004) (*en banc*). Applying this authority, allowing a law professor to opine on uncharged laws and regulations would both (1) confuse and mislead the jury on the question of whether the Defendant intended to commit fraud and (2) impermissibly blame the victim of the fraud. Indeed, in another fraud case, this Court excluded just this type of proposed defense expert witness. *See* Transcript of Record at 249-53, *United States v. Javat*, Case No. 18-CR-20668-DMM-3 (S.D. Fl. Aug. 22, 2019), Dkt. No. 397. This Court should do the same here.

In this case, Defendant is charged with fraud—not breach of contract or violating federal procurement law or regulations. The proposed expert testimony relates to the intricacies of federal procurement law and the parties' rights and responsibilities in forming and performing contracts such as the fuel supply contracts in this case. This testimony will confuse the jury from the central

1

question of whether Defendant intended to defraud the Government. It will also mislead the jury into believing the contractual rights of the parties are somehow relevant to the fraud analysis—when they are not. It will also improperly suggest that the Government was negligent or somehow ratified the fraud scheme, which amounts to legally improper victim blaming. What's more, Defendant's paltry disclosure fails to meet the requirements of Rule 16(b)(1)(C), resulting in procedural default. The Court should grant the motion and exclude Professor Yukins.[1]

## LEGAL STANDARDS

A district court serves a critical role as the "gatekeeper" to the admission of expert testimony. *Daubert*, 509 U.S. at 589 n.7; *Frazier*, 387 F.3d at 1260. The gatekeeping obligation set forth in *Daubert* applies to all types of proposed expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). The obligation extends to a criminal defendant's proposed expert testimony, regardless of how important he may claim the testimony is to the defense. *See, e.g., United States v. Henderson*, 409 F.3d 1293, 1302–04 (11th Cir. 2005) (affirming exclusion of defendant's proposed expert testimony); *Frazier*, 387 F.3d at 1260, 1271–72 (same, emphasizing that a criminal defendant's constitutional and procedural rights do not entitle him to a lower standard for the presentation of expert opinion evidence); *United States v. Cunningham*, 194 F.3d 1186, 1196-97 (11th Cir. 1999) (same).

Next, the *en banc* Eleventh Circuit opinion in *Frazier*, a criminal case, lays out the requirements for admitting expert testimony. The district court's gatekeeping function "'inherently require[s] the trial court to conduct an exacting analysis' of the foundations of expert opinions to

---

[1] The relevant facts and charges at issue in this case are summarized at length in the United States' previous motions *in limine*. *See* ECF Nos. 44, 45, and 47.

ensure they meet the standards for admissibility under Rule 702." 387 F.3d at 1260 (quoting *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002)).

> To determine whether expert evidence is admissible, trial courts must consider whether:
>
> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Id.* at 1260 (quoting *City of Tuscaloosa v. Harcros Chems., Inc.,* 158 F.3d 548, 562 (11th Cir. 1998) (citing in turn *Daubert*, 509 U.S. at 589)). "The proponent of the expert testimony always bears" the burden of establishing each of these requirements. *Id.* at 1260; *see also McClain v. Metabolife Intern., Inc.*, 401 F.3d 1233, 1238 n.2 (11th Cir. 2005)."The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion, whether the proponent is the plaintiff or the defendant in a civil suit, or the government or the accused in a criminal case." *Frazier*, 387 F.3d at 1260.

The first prong ensures that the proposed expert's skills and education are not generally adequate but actually relate to specific opinions he or she proposes to offer. "An expert's opinion is helpful only to the extent the expert draws on some special skill, knowledge, or experience to formulate that opinion; the opinion must be an expert opinion (that is, an opinion informed by the witness' expertise) rather than simply an opinion broached by a purported expert." *United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991). Thus, an expert may be highly qualified to respond to certain questions and to offer certain opinions, but insufficiently qualified to respond to other, related questions, or to opine about other areas of knowledge. *See, e.g., Smelser v. Norfolk Southern Ry. Co.*, 105 F.3d 299, 303 (6th Cir. 1997) ("When making a preliminary finding

3

regarding an expert's qualifications under Fed. R. Evid. 104(a), the court is to examine not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question.") (citations and internal quotation marks omitted).

The second prong is meant to ensure that testimony from an expert, even if otherwise qualified, is sufficiently well-founded and trustworthy to be presented to the jury. In ascertaining the reliability of a particular expert opinion, courts consider (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. *See, e.g., McCorvey*, 298 F.3d at 1256 (citing *Daubert*, 509 U.S. at 593-94). Where, as here, the proposed expert testimony is not of a technical nature, the Court need not apply these factors mechanically, but nonetheless must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire*, 526 U.S. at 152.

As the Eleventh Circuit has noted, "[i]n *Kuhmo Tire,* the Supreme Court made it clear that testimony based solely on the experience of an expert would not be admissible." *Rider v. Sandoz Pharmaceuticals*, 295 F.3d 1194, 1197 (11th Cir. 2002) (citing *Kuhmo Tire*, 526 U.S. at 157). "The expert's conclusions must be based on sound scientific principles and the discipline itself must be a reliable one." *Id.*(emphasis added). In *Frazier*, the Eleventh Circuit applied these principles to exclude a defense expert who sought to offer opinions based largely upon his experience. In that case, the defendant proposed expert testimony regarding the likelihood that hair or fluids would be transferred during sexual contact of the kind alleged in the indictment. The

district court excluded that testimony, and the Eleventh Circuit affirmed. Judge Marcus, writing

for the *en banc* court, explained that the defense did not marshal any hard evidence for the proposed

opinion or peer reviews validating it. Moreover, the defense could not get away with tying the

expert's opinion to his purportedly vast experience:

> Since [the expert] was relying solely or primarily on his experience, it remained the
> burden of the proponent of this testimony to explain how that experience led to the
> conclusion he reached, why that experience was a sufficient basis for the opinion,
> and just how that experience was reliably applied to the facts of the case.   Again,
> "[t]he court's gatekeeping function requires more than simply 'taking the expert's
> word for it.'"   Fed. R. Evid. 702 advisory committee's note (2000 amends.).

*Frazier*, 387 F.3d at 1245.

The third prong requires the proponent to show that the expert's opinion will truly aid the

jury in resolving the issues before it. Expert testimony, like all evidence, must be relevant. *See*

Fed. R. Evid. 401, 402. Unlike ordinary testimony, however, expert testimony must do more; it

must also "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.

R. Evid. 702. As the Eleventh Circuit has explained, "more stringent standards of reliability and

relevance . . . are necessary because of the potential impact on the jury of expert testimony." *Allison

v. McGhan Med. Co*., 184 F.3d 1300, 1310 (11th Cir. 1999). Courts therefore must "ensure that

the proposed expert testimony is relevant to the task at hand [and] that it logically advances a

material aspect of the proposing party's case." *Id.* at 1312 (internal quotation marks omitted)

(citing *Daubert*, 43 F.3d at 1315).

The three-factor inquiry does not end the analysis, however. In *Frazier*, the Eleventh

Circuit held that, "[b]ecause of the powerful and potentially misleading effect of expert evidence,

. . . sometimes expert opinions that otherwise meet the admissibility requirements may still be

excluded by applying [Federal] Rule [of Evidence] 403." 387 F.3d at 1263. Rule 403 allows a

court to exclude evidence where its probative value is substantially outweighed by the risk that the evidence will confuse or mislead the jury or delay the trial by injecting collateral disputes. The rule applies to all evidence but applies with greater force to proposed expert testimony because of the weight jurors may be inclined to give testimony from an expert. *See Allison*, 184 F.3d at 1310; *see also Daubert*, 509 U.S. at 595 ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses.") (citation and internal quotation marks omitted).

## ARGUMENT

### A. Yukins's Testimony Should Be Excluded Under Rules 401, 402, and 403.

Law professor Yukins's testimony about the law and regulations governing the contracts at issue here is irrelevant, will sow confusion, and will mislead the jury as to the issues in the case. *See* Expert Notice Letter from defense counsel, 11/3/2025 ("Exhibit 1"). It is clear that Defendant seeks to use Professor Yukins's testimony as a springboard to argue that the government *knew* Defendant made his profit by overcharging the government for ancillary fees when contracts were canceled, and assented to that business model by paying the inflated ancillary fees (as opposed to exercising its authority to demand more rigorous documentary proof of his expenses beyond the fraudulent invoices he submitted). None of this is relevant or admissible. The mere fact that the government, as a matter of procurement law, could have rejected a term in Defendant's bids—that "special conditions" would apply to ancillary charges if there was a cancellation— is improper victim blaming. Defendant clearly aims to argue that he believed the government's acceptance of the "special conditions" gave him the right to overcharge on ancillary charges amounts, and that

the government is at fault for not seeking greater clarity before accepting his bids. But there is no evidence the government *knew* Defendant would fabricate records to support ancillary charges. Thus, the defense should not be permitted to use Professor Yukins's testimony about the legal framework of the contracts as a means to argue that Defendant believed he had a license to submit fabricated documents in pursuit of reimbursements for expenses he knew he did not actually incur.

To make matters worse, the testimony as to these irrelevant, confusing, and misleading topics would come from a *law professor*, creating a substantial risk that the jury will substitute the expert's opinions for their own factfinding responsibility in determining whether Defendant committed wire fraud. The motion to exclude should, therefore, be granted.

The scope of the expert testimony at issue here bears a striking resemblance to *United States v. Javat, et al.*, where this Court precluded a lawyer from testifying as an expert witness regarding customs laws and regulations in a fraud case. *See* Transcript of Record at 250-51, Case No. 18-CR-20668-DMM-3 (S.D. Fl. Aug. 22, 2019), Dkt. No. 397. There, the defendant was charged with conspiracy to commit wire fraud for his participation in diverting medical devices overseas under false pretenses, then sending the product back to the United States. *See* Indictment at 4-6, Case No. 18-CR-20668-DMM-3, Dkt. No. 3. At trial, the Government moved to preclude the defense from calling a customs lawyer to testify as an expert about the laws and regulations that applied to the import/export of those devices. *See* Transcript of Record at 250, Case No. 18-CR-20668-DMM-3, Dkt. No. 397. Holding that the expert could not testify, the Court reasoned that the lawyer's testimony on "customs laws and/or regulations [was] not relevant and would likely cause jury confusion," including because the defendant was "charged with participating in a fraud scheme, not violating any specific import law or regulation." *Id.* at 251; *see also id.* at 252

7

("[T]he testimony is misleading in the sense that [the defendant]'s compliance with a particular law or regulation does not mean he lacked fraudulent intent to commit the charged offenses."). The Court further found that enmeshing testimony about uncharged laws and regulations would mislead the jury about what was at issue by inserting evidence about legal provisions unrelated to the elements of the charged fraud. *See id.* at 251. And crucially, the Court concluded that the lawyer's testimony would "improperly seek[ ] to shift the blame" to the fraud victims because "a victim's imprudence is ordinarily no defense for a defendant who knowingly exploits that imprudence." *See id.* at 252-53 (citing *United States v. Svete*, 556 F.3d 1157, 1665 (11th Cir. 2009)).

The Court should adopt the same reasoning here. *First*, Professor Yukins's testimony is irrelevant because it serves as a vehicle to shift the blame for Defendant's conduct onto the government. Specifically, testimony from a law professor about what the government understood or believed about Defendant's business model is not relevant to the jury's determination of whether Defendant acted with intent to defraud when he later submitted falsified invoices to the Government to obtain reimbursement for expenses he knew he did not actually incur. Similarly, the fact that the government could have, but did not, demand more rigorous documentary proof from Defendant in addition to the fraudulent invoices does not reflect on Defendant's intent when he submitted those documents.

*Second*, the testimony will sow confusion and mislead the jury. Defendant is not charged with breach of contract or violating federal procurement law; he is charged with wire fraud. It is not just unhelpful but affirmatively misleading for an "expert" lawyer to say—that as a matter of contract law—the government could have taken (but did not take) steps to root out Defendant's

8

intent to defraud. This conflates the relevant question of Defendant's intent with the irrelevant question of what opportunities the government had to ascertain that intent. *See, e.g., Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) ("A witness also may not testify to the legal implications of conduct; the [district] court must be the jury's only source of law.").

Turning to the opinions set forth in Defendant's disclosure specifically (stated in bold), the Government responds as follows:

- **1) Professor Yukins will testify that by accepting Defendant's bids, the government stipulated it would be liable for "special conditions . . . and other ancillary charges" imposed by Defendant if the government canceled a fuel order.**

Irrelevant/Blames the Victim. What the government agreed to does not help the jury evaluate whether Defendant later defrauded the government while seeking reimbursement payments based on fraudulent invoices to justify expenses he did not incur.

- **2) The government could have "access[ed] the quotes reasonableness before the contract award," and still accepted the quotes, which included "special conditions" attached to ancillary charges in the event of cancellation.**

Irrelevant/Blames the Victim.   The government's rights under the FAR before accepting Defendant's fuel orders are not relevant to whether Defendant intended to defraud the government. Defendant seeks to argue that the government turned a blind eye to his fraud scheme by failing to exercise rights that could have identified the scheme from the start. Their failure to do so, Defendant may claim, shows they knew what was going on. This is victim blaming.

Confusing/Misleading. The lawyer's "expert" testimony will suggest that Defendant lacked intent to defraud because he interpreted the government's acceptance of his quotes as license to submit inflated, falsified invoices as agreed to "special conditions" attached to ancillary charges.

- **3) Federal Acquisition Regulation (FAR) required the government, when it canceled the contracts, to give formal notice, "launch a structured negotiation process," and pay Defendant's "reasonable contractor charges that can be demonstrated to the satisfaction of the Government."**

Irrelevant/Blames the Victim. The testimony suggests that Defendant's receipt of fraud proceeds is proof that the government thought the ancillary charges were reasonable and demonstrated to the Government's satisfaction.

Confusing/Misleading. The question for the jury is whether Defendant executed the fraud scheme, not what the FAR provisions say or allowed/required the government to do upon canceling the contracts.

- **4) Under the FAR, the government could have demanded "certified claims in support of disputed charges" and/or "take[n] measures regarding Butler's responsibility." The fact the government did not do so shows either it was negligent in not identifying the fraud scheme or it tacitly endorsed Defendant's conduct.**

Same response as to claim three, *supra*. Moreover, the testimony calls for an improper lay opinion. Professory Yukins is not capable of testifying about what government personnel thought about the veracity of the invoices it received from Defendant, so the fact that the FAR gave the Government a dispute mechanism is a non sequitur. And Professor Yukins is not qualified to give an opinion when it comes to auditing procedures – he is not and has not ever been, for example, a federal contracting officer.

In short, Yukins's proposed opinions are irrelevant, do not correspond to the facts, will profoundly confuse the jury, and contradict the law this jury must apply. The Court should exclude his testimony.

**B. Defendant's Paltry Expert Disclosure Fails to Meet the Requirements of Rule 16(b)(1)(C) and Results in Procedural Default.**

Federal Rule of Criminal Procedure 16(b)(1)(C) sets forth the defendant's disclosure obligations with respect to expert witnesses. Subparagraph (ii) authorizes the Court to establish a deadline for such disclosure, and "[t]he time must be sufficiently before trial to provide a fair opportunity for the government to meet the defendant's evidence." Fed. R. Crim. P. 16(b)(1)(C)(ii).Subsection (iii) of Rule 16(b)(1)(C) details the contents of the disclosure, which "must contain: a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief; the bases and reasons for them; the witness's qualifications, including a list of all publications authored in the previous ten years; and a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition."

Fed. R. Crim. P. 16(b)(1)(C)(iii). The defendant's expert witness generally must sign the disclosure. *See* Fed. R. Crim. P. 16(b)(1)(C)(v).

Here, Defendant's paltry expert disclosure fails on multiple grounds. *First*, the bare bones disclosure simply identifies the opinions Professor Yukins will have, without explaining the basis for forming them. For one glaring example, nowhere in the disclosure does the defense cite a specific contractual clause or FAR regulation to support the proffered opinions. And despite claiming that Yukins "relied upon the documents, regulations and authorities described below" in forming his opinions, *see* Exhibit 1 at 1, no such authority appears to follow apart from generic discussions about how federal contracts work.

*Second*, Defendant reserves the right to amend the expert's opinions, which improperly permits him to enlarge or change the scope of Yukins' opinions as the trial approaches. *See id.* This violates the manifest purpose of an expert disclosure, which is to provide the opposing party with a meaningful opportunity to review, understand, and if necessary respond to the expert's opinions. To compound this problem, the expert disclosure has not been signed (and thus adopted) by Professor Yukins, in violation of Rule 16(b)(1)(C)(5).

## CONCLUSION

For the foregoing reasons, the Court should grant this motion and exclude professor Yukins from testifying as an expert witness for the defense in the field of federal procurement law. It is clear that the proposed testimony will not aid the jury in deciding a relevant issue in this wire fraud case, and there is a substantial danger that the testimony will cause unfair prejudice by confusing and misleading the jury.

Date: November 7, 2025           Respectfully submitted,

JASON A. REDING QUIOÑES
UNITED STATES ATTORNEY

By:    /s/ Elizabeth Young
        ELIZABETH YOUNG
        Assistant United States Attorney
        Court ID No. A5501858
        Elizabeth.Young@usdoj.gov
        United States Attorney's Office
        99 Northeast 4th Street
        Miami, Florida 33132-2111
        Tel: (786) 761-3153

        ABIGAIL SLATER
        ASSISTANT ATTORNEY GENERAL
        ANTITRUST DIVISION

By:    /s/ Jonathan Pomeranz
        Jonathan Pomeranz
        Trevor Wilmot
        Haley Pennington
        Trial Attorneys
        U.S. Department of Justice
        Antitrust Division
        450 5th Street NW
        Washington, D.C. 20530
        S.D. Fla. Special Bar #A5503242
        (202) 316-2179
        jonathan.pomeranz@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I certify that I filed the foregoing document with the Clerk of the Court and served all counsel of record using CM/ECF on November 7, 2025.

<u>/s/ Jonathan Pomeranz</u>

Jonathan Pomeranz
