UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-80093-CR MIDDLEBROOKS

UNITED STATES OF AMERICA

v.

JASEN BUTLER

    Defendant.
_____/

**RESPONSE TO GOVERNMENT'S MOTION IN LIMINE**
**(PRECLUDE DEFENSES BASED ON FEDERAL ACQUISITION REGULATION)**

Jasen Butler ("Butler") through undersigned counsel files this Response to the Government's Motion in Limine to Preclude Defenses Based on the Federal Acquisition Regulation ("Motion in Limine ").

**INTRODUCTION**

The Government filed its Motion in Limine on November 4, 2025 (D.E. 44). The Court ordered that Butler respond to the Government's Motion by November 13, 2025 (D.E. 46). Butler's Response to the Motion follows.

The Government has moved in limine to preclude evidence, argument, or questioning that establishes that, contrary to the Government's entire theory of prosecution, provisions from the Federal Acquisition Regulation ("FAR") required the Government to pay Butler fixed, agreed-upon cancellation and ancillary fees regardless of whether Butler actually incurred them. The Government further seeks to exclude evidence that conclusively proves that Butler was not required by any applicable contract term or condition to support his claim for payment with documentation from his suppliers.

The Government's Motion in Limine should be denied because evidence regarding the correct application of the contract terms and federal regulations at issue directly respond to specific allegations in the Indictment and rebut essential elements of materiality and intent. This evidence strikes at the very core of the Indictment and fundamentally undermines the foundation of the Government's case. In addition, exclusion of this evidence will deprive the jury of accurate and truthful testimony regarding issues that the Government has made central to their prosecution. In short, the Government claims that the applicable law is not applicable and that accurate facts will somehow confuse the jury.

The Government in the instant Motion and in a newly filed Motion to Exclude Proposed Defense Expert (D.E. 50) seeks exclusion of evidence that will establish the truth. The entire basis of the Government's case against Butler is rooted in an inaccurate reading of the applicable contract terms and federal regulations. Whether the incorrect interpretation is deliberate or a product of its misplaced reliance on its lay witnesses' wrong opinions, the Government has doubled and tripled down on their demonstrably false interpretation of the contracts formed by the SEA Card® program.

## BACKGROUND

The U.S. Government Ships' Easy Acquisition (SEA) Card® program, also known as the SEA Card® program, is DLA Energy's ("DLA-E") secure Internet-based solution that coordinates marine fuel procurements. The SEA Card® Online is an order, receipt and invoice system that allows Department of Defense military services and federal civilian agency vessels to purchase fuel and ancillary services from commercial ship refueling merchants at seaports worldwide. Fuel can be ordered against a DLA-E bunker contract, or if a seaport does not have a bunker contract in place, the vessel can place a Request for Quote which triggers a competitive bid process.

During the competitive bid process, contractors submit quotes for fixed prices for fuel and non-fuel ancillary services in accordance with the SEA Card® Terms and Conditions ("T&C's"), which are updated annually for each fiscal year. Contractors can also propose additional terms/conditions that deviate from the standard terms. The Government does not have to accept a contractor's quote or terms. By making an award, DLA-E has necessarily determined that all proposed terms are reasonable and has accepted the contractual obligations contained in the quote.

When he submitted bids through the SEA Card® system, Butler, as directed by DLA-E, offered fully built-up fixed prices for ancillary services in his quote. In addition, Butler routinely included special conditions regarding order cancellation and other ancillary charges in his quotations for awards of these orders. The Government's liability for cancellations and ancillary charges was stipulated in the special conditions in Butler's quotations. The Government did not reject the reservations of cancellation and related charges, despite the Government's own terms and conditions that gave the Government that right.

It is beyond dispute that the SEA Card® program awards firm-fixed price commercial contracts within the provisions of FAR Part 12. A fixed-price contract is not subject to adjustment based on the contractor's cost experience. <u>See</u> FAR 16.201-1 (placing upon the contractor maximum risk and full responsibility for all costs and resulting profit or loss). Conversely, under federal law, government agencies cannot award contracts for commercial services on a cost-reimbursement basis. FAR 16.301-3(b). The Government is well aware of this fact.

In April 2020, Jasper Pili, a contracting officer with the DLA-E, wrote in a letter to Butler that, ███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████ (**Exhibit A**, p.2) (emphasis added)

3

Francis C. Murphy, a contracting officer with the DLA-E and key Government witness, swore in an affidavit in June 2025 that the SEA Card® open market ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (**Exhibit B**, p. 2) (emphasis added)

The SEA Card® Open Market Program Terms and Conditions themselves cite to FAR 52.216-1 -- TYPE OF CONTRACT (APR 1984) and state: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. (**Exhibit C**, p.68) (emphasis added)

## GOVERNMENT'S INCORRECT ALLEGATIONS AND THEORY

In paragraph 3 of the "General Allegations" of the Indictment (D.E. 1), the Government incorrectly alleges that, "When a fuel order was cancelled or changed, the DOD component or other agency operating the vessel **reimbursed the vendor for any costs the vendor incurred as a result of the cancellation or change**." (emphasis added)

On page 2 of the Motion in Limine, the Government incorrectly states, "Ancillary fees are pass-along fees: the military **reimburses fuel contractors like Butler for fees incurred while preparing to supply fuel, provided that the contractors can prove, with documentation from their suppliers, that expenses were actually incurred**." (emphasis added)

In December 2023, the Government incorrectly informed Butler through correspondence to counsel that, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (**Exhibit D**, p.1)

On pages 6-7 of the Motion in Limine, the Government reiterates its incorrect FAR reliance and theory and mischaracterizes the defense by stating, "[D]efendant' claim that a firm fixed-price contract prevented military from cancelling at any price other than the full contract price is not the

law. *See* FAR 13.302 & 12.403(d)(1) (establishing that contracts for goods, when the government cancels, contractors are only entitled to recoup losses and be paid for work already done)."

Each of the Government's statements above is flatly inconsistent with applicable federal contract law and the specific contract terms themselves. While the Government has relied on its lay witnesses' interpretation of the complex regulatory framework,[1] their errors have been identified clearly in Butler's expert witness summary. (**Exhibit E**) The applicable SEA Card® terms and conditions, specific contract terms, FAR regulations, and basic contract law principles all support the same conclusion: <u>that the Government owed Butler the money that he was paid</u>.

The Government's filings and prior correspondence attempt to frame the issue as a termination for convenience (incorrectly citing to FAR 13.302 & 12.403(d)(1)), requiring the Government to only reimburse Butler for costs actually incurred as a result of cancellation. The Government's framing is inaccurate.

On page 1 of its Motion in Limine, however, the Government states that, "the FAR is irrelevant to the narrow fact question of whether Defendant intentionally made **material representations** to the Navy and Coast Guard to obtain money **for expenses that he did not actually incur**." (emphasis added) The Government, in this one sentence, simultaneously acknowledges and ignores that it bears the burden of proving BOTH the materiality of Butler's misrepresentations in the context of the specific contract issues, AND that Butler was REQUIRED to provide proof that he had actually incurred the expenses to be entitled to them. The Government, for the reasons below, can do neither.

To prevail in its argument, the Government, Court, and jurors would have to ignore:

---

[1] On October 31, 2025, the Government notified Butler that it does not intend to call any witnesses to testify as experts during its case-in-chief.

- The language of FAR 52.212-4 in the contract, which made terminations subject to the terms of the parties' agreement.
- The parties' agreements, founded on quotations – structured by the Government – which allowed the merchant to stipulate cancellation charges, as was recognized in the SEA Card® terms and conditions.
- That the terms and conditions took precedence over the termination for convenience provision, as a matter of law.
- The fact that the Government never issued a proper notice of termination for convenience, as required by the FAR.

The only correct interpretation of the SEA Card® firm fixed-price contract is that its specific cancellation provisions, which require the Government to pay the agreed fixed price of cancellation and other ancillary charges, take precedence over the termination for convenience provision that allowed for recovery of only the reasonable charges incurred. As a result, Butler was legally entitled to payment of the quoted and agreed-upon cancellation and ancillary fees.

The Government's apparent claim that ANY government contract cancellation constitutes a "termination for convenience" is misguided and legally incorrect. Further, such a Government claim runs contradictory to the current and established Government position that government contracts being cancelled should be adjudicated based upon the contract cancellation provisions rather than the lengthy and costly termination for convenience process and procedure. And factually, there has been no evidence produced by the Government in this case that the required notice was given to Butler that the Government was terminating any of the contracts at issue for convenience.

The Government, in its Motion in Limine, misstates Butler's legal position in this case. Butler is not arguing that he "had a contractual right to the proceeds of his fraud." Butler is arguing that, based on a proper interpretation of the contract formed by his participation in the SEA Card® program, **he did not commit fraud**. To that end, the FAR evidence that the Government attempts

6

to exclude is directly relevant to permit Butler to rebut the Government's allegations that his misrepresentations were "material" and that he acted with an "intent to defraud."

## ARGUMENT

The Court should deny the Government's Motion in Limine because evidence and argument concerning the applicable federal contracting regulations are admissible under Federal Rule of Evidence 401 and 402. Such evidence is relevant, directly responsive to the general allegations set forth in the Indictment, and essential to rebut the Government's proof on the elements of materiality and intent. The Government's additional argument that this relevant evidence should be excluded under Rule 403 is nonsensical. Truthful and accurate testimony will not confuse the issues and mislead the jury. The Government's incorrect interpretation of the FAR and the contract terms cannot be permitted to stand unchallenged.

**A. Evidence and argument regarding the correct interpretation of the contract created between Butler and the Government is directly relevant to the material issues in the case.**

"The starting place for evidentiary admissibility is relevance." United States v. McGregor, 960 F.3d 1319, 1323 (11th Cir. 2020). "District courts may admit relevant evidence, which is evidence that 'has *any* tendency to make a fact [of consequence in determining the action] more or less probable than it would be without the evidence.'" United States v. Smith, 967 F.3d 1196, 1205 (11th Cir. 2020) (quoting Fed. R. Evid. 401).

11th Circuit Pattern Wire Fraud Jury Instructions:

The Defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt:

(1) the Defendant knowingly devised or participated in a scheme to defraud someone by using false or fraudulent pretenses, representations, or promises;

(2) the false pretenses, representations, or promises were about a **material fact**;

7

(3) the Defendant acted with the **intent to defraud**; and

(4) the Defendant transmitted or caused to be transmitted by [wire] [radio] [television] some communication in interstate commerce to help carry out the scheme to defraud. (emphasis added)

A "material fact" is an important fact that a reasonable person would use to decide whether to do or not do something. A fact is "material" if it has the capacity or natural tendency to influence a person's decision. It doesn't matter whether the decision-maker actually relied on the statement or should have known that the statement was false.

To act with "intent to defraud" means to act knowingly and with the specific intent to use false or fraudulent pretenses, representations, or promises **to cause loss or injury**. **Proving intent to deceive alone, without the intent to cause loss or injury, is not sufficient to prove intent to defraud.** (emphasis added)

Precedent in the 11th Circuit establishes that a defendant intends to defraud when he "attempt[s] to obtain, by deceptive means, **something to which he was not entitled**." United States v. Watkins, 42 F.4th 1278, 1282 (11th Cir. 2022) (emphasis added) ("Under the District Court's instructions, the jury could not have convicted Senior without finding that his misrepresentations were made with an intent to cause loss or injury to the individuals from whom he solicited money, *i.e.,* **to obtain money to which he was not entitled**.")

In this case, the Government has alleged that Butler was not entitled to the money that he obtained. Therefore, it stands to reason that evidence and argument that directly undermines this theory, and makes Butler's entitlement to the money MORE likely, is relevant and admissible.

"Lies without injuries are not criminal frauds." See Kousisis v. United States, 605 U.S. 1384, 1408 (2025) (J. Gorsuch, concurring). Materiality is an element that the Government must satisfy in any federal wire-fraud prosecution. See Neder v. United States, 527 U.S. 1, 25 (1999).

8

The standard for materiality in this context is found in United Health Services, Inc. v. United States ex rel. Escobar, 579 U.S. 176, 194, n.5 (2016) – whether the misrepresentation goes to the "very essence of the bargain."

"The traditional benefit-of-the bargain injury rule is not some 'vestigial limb.' It plays an important role in separating mere lies from criminal frauds, and, in that way, reducing the risk of frivolous prosecutions. Just ask yourself if a "putative victim of wire fraud got exactly what he paid for, how exactly is he a victim at all?" Kousisis v. United States, 605 U.S. at 1407 (J. Gorsuch, concurring).

The "demanding" materiality requirement expressed in United Health Services narrows the universe of actionable misrepresentations. Kousisis v. United States, 605 U.S. at 1398.

In its motion, the Government correctly acknowledges that a fraud case requires proof "of a material misrepresentation." Federal contract law, and the applicable FAR provisions in particular, establish conclusively that any misrepresentations made by Butler after the contract terms were accepted by the Government (obligating them to pay the full cancellation and ancillary fees) were not material. Evidence that the Government received the benefit of the bargain (i.e., an opportunity for low-cost fuel and fixed ancillary charges), directly undermines the Government's materiality argument.

The federal contract law evidence further undermines the Government's incorrect reliance on the termination for convenience clause (which, parenthetically, is a FAR provision), limited Butler's recovery to reimbursement for costs he actually incurred. As explained above, this interpretation of the contact is legally incorrect. In addition, contrary to the Government's repeated assertions, not a single provision in the applicable SEA Card® terms and conditions required Butler to provide documentation from his supplier to establish that the ancillary fees were actually

9

incurred. The DLA-E, in fact, misstated and misrepresented the applicable law when requesting such documentation from Bulter.

The Government's reliance on United States v. Guldi, 141 F.4th 435 (2d Cir. 2025), United States v. Gole, 158 F.3d 166 (2d Cir. 1998), United States v. Merrill, 685 F.3d 1001 (11th Cir. 2012), and United States v. Martin, 798 F.2d 308 (8th Cir. 1986) is misplaced.

The Government cites to these cases collectively to argue that Butler's subjective belief that he was entitled to the money is not a valid defense to wire fraud. The indisputable facts in Butler's case, if admitted, will prove conclusively that Butler was objectively entitled to the money he was paid, and thus, any misrepresentations he made regarding his "cost experience" were not material, did not go to the "essence of the bargain," and that Butler had no intent to cause loss or injury to the Government (and they objectively suffered none).

The Government's reliance on Merrill is particularly inapposite. In that case, the misrepresentations by Merrill and his co-defendants regarding the providence of the ammunition it sold (from a Communist Chinese military company) were **clearly material** because the contract at issue explicitly prohibited delivery from that source. See Merrill, 685 F.3d at 1012 (emphasis added).

Here, evidence that establishes that Butler was legally entitled to the money that he received is admissible to rebut the materiality and intent to defraud elements of the charged offense. A jury could lawfully find that Butler had no intent to cause loss or injury to the Government because he knew that his misrepresentations were not relevant. See United States v. Rossomando, 144 F.3d 197, 203 (2d Cir. 1998).

**B. Evidence and argument regarding the correct interpretation of the contract created between Butler and the Government will not confuse or mislead the jury. The significant probative value of Butler's evidence and argument is not substantially outweighed**

**by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.**

Federal Rule of Evidence 403 'is an extraordinary remedy which should be used sparingly, and, indeed, the trial court's discretion to exclude evidence as unduly prejudicial is narrowly circumscribed.' " McGregor, 960 F.3d at 1324 (quoting United States v. Cross, 928 F.2d 1030, 1051 (11th Cir. 1991). "The major function of Rule 403 is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." Cross, 928 F.2d at 1048.

In its Motion in Limine, the Government frames the issue as: "Defendant's falsification of invoices to obtain money from the military for **expenses that he knew he did not actually incur**." (emphasis added)

Thus, the Government argues, Butler's introduction of evidence that his invoices were not for "expenses," but rather for the fees owed to him by the Government pursuant to the valid and controlling contract terms, will somehow "sow confusion and mislead the jury."

In support of its various arguments, the Government also cites to this Court's ruling excluding completely different expert testimony regarding completely different issues in *United States v. Luis Alberto Soto*, Case No. 18-CR-20668-DMM, ECF No. 397 (Trial Transcript) at 249-256 (S.D. Fla. August 22, 2019). Even a cursory comparison of the allegations and issues presented in *Luis Alberto Soto* and the instant case exposes the significant differences in issues presented to the Court.

In *Luis Alberto Soto*, the excluded expert testimony concerned the defendant's compliance—or lack thereof—with Customs and FDA requirements. The Government's motion to exclude (ECF No. 351) argued that the proposed testimony addressed matters introduced solely by the defendant at trial, rather than issues central to the Government's own theory of prosecution.

In sharp contrast, the expert testimony at issue here directly rebuts specific allegations contained in the Indictment and the Government's repeated misinterpretation of the same contractual provisions underlying its case.

Encouraging the Court to adopt the *Luis Alberto Soto* reasoning in this case, the Government incredibly states, "the question for the jury is not what the contracts' payment terms were, but rather if the defendant knowingly and intentionally falsified documents while executing a scheme to defraud the Navy and Coast Guard."

The Government's attempt to exclude Mr. Butler's evidence rests on a truncated view of the elements of fraud. By focusing narrowly on the alleged misrepresentations, the Government ignores the remaining two elements it must establish beyond a reasonable doubt—**materiality** and **intent to defraud**. The proposed evidence is plainly relevant because it bears directly on those contested elements and provides critical context for evaluating the Government's theory of the case.

Butler understands very clearly that the Government has chosen a criminal indictment and prosecution to raise these contract issues, rather than file a civil complaint or pursue a regulatory dispute. He understands that the Government is seeking to convict and potentially incarcerate him based on its patently incorrect interpretation of the operative contract and regulatory laws.

The Government chose a theory of prosecution that requires it to present evidence that when SEA Card® fuel orders were cancelled or changed, the government was only required to **reimburse Butler for any costs he incurred as a result of the cancellation or change.** In doing so, the Government apparently intends to offer lay witness testimony reciting and interpreting the applicable contract terms (and FAR clauses) incorrectly. In addition, the Government has repeatedly and incorrectly asserted that Butler was required to support, **with documentation from**

12

**his suppliers**, that the expenses he submitted for payment were actually incurred. Again, to prove that allegation, the Government will apparently seek to present lay witness testimony to incorrectly recite and interpret the applicable contract terms (and FAR clauses).

It is impossible to comprehend how the significant probative value of the **correct** interpretation of the contract terms and conditions at issue in this case could be substantially outweighed by unfair prejudice, confusion of issues, etc. If the jury becomes confused, the Government's **incorrect** interpretation of these important issues will be to blame. The Government cannot be permitted to have their cake and eat it too – citing to FAR clauses to bolster their theory of prosecution – while simultaneously objecting to the introduction of FAR and federal contract law principles that accurately refute their theory and present lawful defenses to the charged conduct.

Contrary to the Government's assertion and argument, the actual contractual payment terms are clearly relevant evidence to present to the jury to answer the dispositive questions: <u>Whether those payment terms entitled Butler to the money he received, and whether his misrepresentations were material and prove his intent to defraud</u>. Those issues are the EXACT questions the jury must consider and answer in this criminal case. Whether the Government's evidence accurately proves what those payment terms were must be challenged by relevant, truthful, and accurate testimony.

Though the Government cited to cases regarding "self-help" theories of defense, the Government, in this case, chose a theory of fraud that completely discounts Butler's correct interpretation of the contract – that he was lawfully owed the money he received. At no time has the Government acknowledged even the possibility that Butler was entitled to payment pursuant to the contract terms. Instead, the Government has chosen to tee up the "reimbursement" issue, only to continuously swing and miss at the essential point.

The evidence will show that DLA-E attempted to redefine the contract that they agreed to and entered into with Butler by "moving the goal posts" and adding terms and conditions for payment that were not required by the contract terms and inconsistent with the law. The Government, at trial, seeks to legitimize these actions by introducing incorrect evidence to argue that Butler's misrepresentations were material and that he had the requisite intent to defraud. The Government has chosen this mountain to die on but should not be permitted to drag Butler down with them.

## CONCLUSION

For the reasons set forth in his Response, Jasen Butler respectfully requests this Honorable Court deny the Government's Motion in Limine.

Dated: November 13, 2025

| | |
|---|---|
| **GOLDBERGER WEISS, P.A.** | **BRUCE A. ZIMET, P.A.** |
| 1555 Palm Beach Lakes Boulevard | 1555 Palm Beach Lakes Boulevard |
| Suite 1400 | Suite 1400 |
| West Palm Beach, Florida 33401 | West Palm Beach, Florida 33401 |
| Tel: (561) 659-8300 | Tel: (561) 508-7741 |
| Fax: (561) 284-8938 | Fax: (954) 760-4421 |
| Email: jason@goldbergerweiss.com | Email: BAZ@BruceAZimetLaw.com |
| | |
| /s/JASON S. WEISS, ESQ. | /s/ BRUCE A. ZIMET, ESQ. |
| Florida Bar No. 0096040 | Florida Bar No. 0225053 |
| Attorney for the Defendant | Attorney for the Defendant |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 13, 2025, undersigned electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of Florida by using the CM/ECF system. Undersigned certifies that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

| | |
|---|---|
| **GOLDBERGER WEISS, P.A.**<br>1555 Palm Beach Lakes Boulevard<br>Suite 1400<br>West Palm Beach, Florida 33401<br>Tel: (561) 659-8300<br>Fax: (561) 284-8938<br>Email: jason@goldbergerweiss.com | **BRUCE A. ZIMET, P.A.**<br>1555 Palm Beach Lakes Boulevard<br>Suite 1400<br>West Palm Beach, Florida 33401<br>Tel: (561) 508-7741<br>Fax: (954) 760-4421<br>Email: BAZ@BruceAZimetLaw.com |
| /s/JASON S. WEISS, ESQ.<br>Florida Bar No. 0096040<br>Attorney for the Defendant | /s/ BRUCE A. ZIMET, ESQ.<br>Florida Bar No. 0225053<br>Attorney for the Defendant |