UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-80093-CR MIDDLEBROOKS

UNITED STATES OF AMERICA

v.

JASEN BUTLER

    Defendant.

_____/

### RESPONSE TO GOVERNMENT'S MOTION TO PRECLUDE LEGALLY PROHIBITED AND FACTUALLY BASELESS DEFENSES

Jasen Butler ("Butler") through undersigned counsel files this Response to the Government's Motion to Preclude Legally Prohibited and Factually Baseless Defenses ("Motion to Preclude").

### INTRODUCTION

The Government filed its Motion to Preclude on November 5, 2025 (D.E. 45). The Court ordered that Butler respond to the Government's Motion by November 13, 2025 (D.E. 46). Butler's Response to the Motion follows.

The Government has moved to preclude Butler from offering a "justification defense," or introducing any evidence that would, constitute "victim blaming." Butler does not intend to raise a "justification defense" nor "blame government victims," as framed by the Government in their Motion.

The Government's Motion and factual recitation fundamentally mischaracterize Mr. Butler's defenses, recasting legitimate legal and factual challenges as improper arguments. The prosecution's theory appears to rest on a basic misunderstanding of the governing contract terms

and conditions related to cancellations and ancillary charges. This misunderstanding stems from the Government's misplaced reliance on a contractual provision that was not in effect during the charged period and its erroneous view that exposing vulnerabilities and inconsistencies within the procurement system constitutes "victim blaming." In truth, Mr. Butler's arguments directly and properly challenge the Government's allegations and the reliability of its witnesses' testimony.

## BACKGROUND

The U.S. Government Ships' Easy Acquisition (SEA) Card® program, also known as the SEA Card® program, is DLA Energy's ("DLA-E") secure Internet-based solution that coordinates marine fuel procurements. The SEA Card® Online is an order, receipt and invoice system that allows Department of Defense military services and federal civilian agency vessels to purchase fuel and ancillary services from commercial ship refueling merchants at seaports worldwide. Fuel can be ordered against a DLA-E bunker contract, or if a seaport does not have a bunker contract in place, the vessel can place a Request for Quote which triggers a competitive bid process.

During the competitive bid process, contractors submit quotes for fixed prices for fuel and non-fuel ancillary services in accordance with the SEA Card® Terms and Conditions ("T&C's"), which are updated annually for each fiscal year. Contractors can also propose additional terms/conditions that deviate from the standard terms. The Government does not have to accept a contractor's quote or terms. By making an award, DLA-E has necessarily determined that all proposed terms are reasonable and has accepted the contractual obligations contained in the quote.

When he submitted bids through the SEA Card® system, Butler, as directed by DLA-E, offered fully built-up fixed prices for ancillary services in his quote. In addition, Butler routinely included special conditions regarding order cancellation and other ancillary charges in his quotations for awards of these orders. The Government's liability for cancellations and ancillary

charges was stipulated in the special conditions of Butler's quotations. The Government did not reject the reservations of cancellation and related charges, despite the Government's own terms and conditions that gave the Government that right.

In August 2022, the Government attempted to rewrite the SEA Card® contract by unilaterally inserting new payment conditions that had no basis in the program's established terms or in law. When cancellation or other ancillary charges arose, instead of paying the fixed prices it had agreed to, the Government adopted a policy of bad faith—refusing payment and insisting, without contractual or legal support, that it was obligated only to "reimburse" Butler for out-of-pocket costs.

The SEA Card® terms and conditions and the contract's specific fixed-price cancellation provisions take precedence over the general termination-for-convenience clause. Because those provisions required payment of the agreed fixed prices for cancellation and ancillary charges, Butler was legally entitled to receive the quoted amounts in full.

## ARGUMENT

Quite simply, Butler denies that he had an intent to defraud and denies that his alleged misrepresentations were material.

Precedent in the 11th Circuit establishes that a defendant intends to defraud when he "attempt[s] to obtain, by deceptive means, **something to which he was not entitled**." United States v. Watkins, 42 F.4th 1278, 1282 (11th Cir. 2022) (emphasis added) ("Under the District Court's instructions, the jury could not have convicted Senior without finding that his misrepresentations were made with an intent to cause loss or injury to the individuals from whom he solicited money, *i.e.,* **to obtain money to which he was not entitled**.")

In this case, the Government has alleged that Butler was not entitled to the money that he obtained. Therefore, it stands to reason that evidence and argument that directly undermines this theory and makes Butler's entitlement to the money MORE likely, is relevant and admissible.

"Lies without injuries are not criminal frauds." See Kousisis v. United States, 605 U.S. 1384, 1408 (2025) (J. Gorsuch, concurring). Materiality is an element that the Government must satisfy in any federal wire-fraud prosecution. See Neder v. United States, 527 U.S. 1, 25 (1999). The standard for materiality in this context is found in United Health Services, Inc. v. United States ex rel. Escobar, 579 U.S. 176, 194, n.5 (2016) – whether the misrepresentation goes to the "very essence of the bargain."

"The traditional benefit-of-the bargain injury rule is not some 'vestigial limb.' It plays an important role in separating mere lies from criminal frauds, and, in that way, reducing the risk of frivolous prosecutions. Just ask yourself if a "putative victim of wire fraud got exactly what he paid for, how exactly is he a victim at all?" Kousisis v. United States, 605 U.S. at 1407 (J. Gorsuch, concurring).

The "demanding" materiality requirement expressed in United Health Services narrows the universe of actionable misrepresentations. Kousisis v. United States, 605 U.S. at 1398.

**A. Though Butler does not intend to raise a "justification defense," as framed by the Government in their Motion to Preclude, evidence regarding the SEA card system and "normal commercial business practice within the industry" must be presented to defend, challenge, and contest the Government's allegations that submission of documents for reimbursement was required.**

The Government misunderstands Butler's position and defense in this case. Butler does not intend to raise a "justification defense" as framed by the Government. Though Butler is a small business owner and he profited when the Government cancelled or changed orders triggering the fixed-price ancillary fee terms in the agreed-upon contract, he does not claim that he presented

4

altered invoices to "compete with larger competitors," or "make a profit to keep his fuel prices cheaper."

Butler maintains, as he has maintained consistently, that the Government owed him the money he was paid based on a correct interpretation of the contracts created by participation in the SEA Card® program.

Likely Government witnesses, on the other hand, have stated in interviews and reports produced in discovery that Butler's proposed contract terms (requiring full payment of order upon cancellation) are ███████████████████████████████████████████████████████████████████████████████████████████████████████████ (**Exhibit A** – LCDR Gregory Sceviour email dated August 19, 2024) and (**Exhibit B** – Memorandum of Interview: Francis Murphy, page 1)

None of these assertions are correct.

There is substantial evidence to prove that Butler's terms were normal business practice within the industry and the SEA Card® Program. There will be NO evidence to prove that the applicable SEA Card® Program terms and conditions limited Butler's recovery to "reimbursement" of fees or required Butler to provide an invoice from his fuel supplier to be "reimbursed" only for costs incurred.

The Government's confusion can be traced to their misplaced reliance on the termination for convenience clause, as well as their reliance on the following paragraph contained in the **updated** SEA Card® Program terms and conditions that went into effect on **October 1, 2024**:

> 8. ALL charges invoiced in SEA Card® Online, as well as claims, must be supported with appropriate documentation. For fuel charges this documentation includes a Bunker Delivery Receipt (BDR) signed and dated by a representative of the Government vessel and bearing the vessel stamp, if available. **For ancillary**

**charges and other claims, evidence of all costs invoiced must be provided. This may include invoices or other documentation from the fuel or transportation subcontractors showing that the charges were incurred and paid. Failure to provide required documentation may result in the charges being disputed or denied.** (emphasis added)

The SEA Card® terms and conditions in effect at the time of the charged offenses (2022-2023) do not include this paragraph or any reference to a requirement to submit subcontractor invoices to prove charges were incurred and paid. The Government's entire argument in this case is based on a change to the terms and conditions that went into effect AFTER the charged conduct. The T&C's were amended in late 2024 due to the recognition by the Government of the SEA Card® system's inherent vulnerabilities and loopholes that resulted in over $42 million in ancillary fees paid by the Government to more than 75 different vendors in only a five-year period.

Evidence that the Government regularly paid ancillary fees to Butler and other SEA Card® vendors without requiring proof that the costs were incurred and paid will directly contradict the Government's key witnesses and theory of prosecution. Additionally, it will cast significant doubt on the materiality of Butler's alleged misrepresentations, and ultimately, his intent to defraud.

**B. Evidence that Butler worked within the structure of the system created by the Government is admissible to defend, challenge, and contest the Government's allegation that he had an intent to defraud and is not "victim blaming."**

The "vulnerabilities" and "loopholes" inherent in the SEA Card® Terms and Conditions in effect at the time of the charged conduct is admissible and relevant to rebut the Government's theory of prosecution and does not constitute "victim blaming," as framed by the Government. The Government has attempted to label Butler's defense, but the labels are wrong, as is the substance of their arguments.

6

LCDR Gregory Sceviour, in an email to DCIS Investigator Romano Depaoli on June 13, 2024, recognized and complained of the ███████████████████████████████ ████████████████████████████ (**Exhibit C** – cancellation charge issue)

Attorney Gilbert Teal of Legal Service Command, in an email to Gabriel Soll Attorney-Advisor, U.S. Coast Guard Acquisition & Procurement Law, dated May 14, 2018, stated █████████████████████████████████████████████████ ████████████████ (**Exhibit D** – email from Teal to Thorne and Soll)

Attorney Daniel Winand of Legal Services Command, in an email to Mr. Teal and Mr. Soll, dated August 15, 2018, stated, ████████████████████████████████ ████████████████████████████████████████ (**Exhibit E** – email from Winand to Teal and Soll)

Mr. Winand, in a July 13, 2018 email stated, ███████████████████████ █████████████████████████████████████ (**Exhibit F** – email from Winand to Teal and Soll)

These examples are not raised to "victim blame," but rather to expose that the Government's witnesses and agents clearly recognized that the "Frankenstein's monster" SEA Card® system had loopholes, glitches, and vulnerabilities that could lead to the military paying for fuel that it did not receive. That Butler was able to successfully identify and profit within the parameters of the system is relevant to Butler's ultimate theory of defense – that he was properly owed the money the Government paid him.

The Government, in its Motion, conflates two different issues: (1) an improper argument that the Navy, Coast Guard, or DLA was "negligent" in not detecting Butler's alleged misrepresentations, and (2) a proper argument that the Government was obligated to (and

7

presumedly did) fully evaluate ALL of Butler's proposed contractual terms at the time of bidding and determined that his quoted pricing was "fair and reasonable," his terms were "appropriate," and to the "advantage" of the Government. It is the second issue that Butler intends to present in support of his contract defense.

The Government also misstates the Defendant's materiality defense. There is no part of Butler's defense that relies on a characterization of the Government's approval of his bids as "negligence." To the contrary, Butler's materiality defense relies substantially on the contracting officers at DLA-E having done their jobs properly and thoroughly.

## **CONCLUSION**

The Government, in its Motion, incorrectly identifies and frames issues that are not accurate representations of the evidence and Butler's positions. In doing so, the Government suggests improper arguments will be made and obscures the proper arguments and relevant evidence that will undermine the credibility of its key witnesses and attack the foundation of its theory of prosecution. Butler must retain the right to properly challenge the Government's evidence and present additional information and argument that raises reasonable doubt as to the materiality of Butler's alleged misrepresentations and whether he had the requisite intent to defraud.

The Government is trying to jam a square-peg into a round hole. In doing so, it continues to gaslight by misrepresenting Butler's arguments as well as the applicable contract terms and provisions. Challenging the Government's allegations and testimony is not victim blaming, it is defending against the Government's assertions that presume guilt.

The proper remedy for the Government's SEA Card® rising ancillary cost issues was to identify the vulnerabilities and loopholes, properly amend the applicable terms and conditions, and

close the loopholes (as they did) – not to indict and prosecute Butler for identifying and profiting from them. Seeking criminal liability based on rules and regulations that were not in effect at the time of Butler's conduct defies common sense and due process.

Dated: November 13, 2025

| | |
|---|---|
| **GOLDBERGER WEISS, P.A.** | **BRUCE A. ZIMET, P.A.** |
| 1555 Palm Beach Lakes Boulevard | 1555 Palm Beach Lakes Boulevard |
| Suite 1400 | Suite 1400 |
| West Palm Beach, Florida 33401 | West Palm Beach, Florida 33401 |
| Tel: (561) 659-8300 | Tel: (561) 508-7741 |
| Fax: (561) 284-8938 | Fax: (954) 760-4421 |
| Email: jason@goldbergerweiss.com | Email: BAZ@BruceAZimetLaw.com |
| | |
| /s/JASON S. WEISS, ESQ. | /s/ BRUCE A. ZIMET, ESQ. |
| Florida Bar No. 0096040 | Florida Bar No. 0225053 |
| Attorney for the Defendant | Attorney for the Defendant |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 13, 2025, undersigned electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of Florida by using the CM/ECF system. Undersigned certifies that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

| | |
|---|---|
| **GOLDBERGER WEISS, P.A.**<br>1555 Palm Beach Lakes Boulevard<br>Suite 1400<br>West Palm Beach, Florida 33401<br>Tel: (561) 659-8300<br>Fax: (561) 284-8938<br>Email: jason@goldbergerweiss.com<br><br>/s/JASON S. WEISS, ESQ.<br>Florida Bar No. 0096040<br>Attorney for the Defendant | **BRUCE A. ZIMET, P.A.**<br>1555 Palm Beach Lakes Boulevard<br>Suite 1400<br>West Palm Beach, Florida 33401<br>Tel: (561) 508-7741<br>Fax: (954) 760-4421<br>Email: BAZ@BruceAZimetLaw.com<br><br>/s/ BRUCE A. ZIMET, ESQ.<br>Florida Bar No. 0225053<br>Attorney for the Defendant |