UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  25-80093-CR MIDDLEBROOKS

UNITED STATES OF AMERICA

v.

JASEN BUTLER

      Defendant.

_____/

## RESPONSE TO GOVERNMENT'S MOTION TO EXCLUDE PROPOSED DEFENSE EXPERT

Jasen Butler ("Butler) through undersigned counsel files this Response to the Government's Motion to Exclude Proposed Defense Expert ("Motion to Exclude").

## INTRODUCTION

The Government filed its Motion to Exclude on November 7, 2025 (D.E. 50). The Court ordered that Butler respond to the Government's Motion to Exclude by November 18, 2025 (D.E. 52). Butler's Response follows.

The Government has moved to exclude the proposed testimony of defense expert witness Professor Christopher Yukins, claiming that his truthful and accurate testimony regarding material issues concerning government contract clarification, application, and process is "irrelevant and unfairly prejudicial." Consistent with prior Government motions (D.E. 44 and 45), the Motion To Exclude continues to reframe issues, misstate defenses, and mischaracterize proposed testimony in an attempt to shoehorn a square-peg argument into round hole of case facts. While doing so, the Government incorrectly claims that Professor Yukins will opine on "uncharged laws and regulations," in a transparent and woefully unsuccessful attempt to mimic language from this

Court's inapplicable prior ruling in *United States v. Luis Alberto Soto*, Case No. 18-CR-20668-DMM, ECF No. 397 (Trial Transcript) at 249-256 (S.D. Fla. August 22, 2019).

The Government's Motion to Exclude should be denied because the proposed testimony regarding the correct application, clarification, and processes concerning the contract terms and federal regulations at issue directly confronts and rebuts specific allegations in the Indictment related to essential elements of materiality and intent. The expert witness testimony evidence strikes at the very core of the Indictment and fundamentally undermines the foundation of the Government's case. In addition, exclusion of this evidence would deprive Bulter of his right of confrontation and deprive the jury of accurate and truthful testimony regarding issues that the Government has made central to their prosecution.

## PROFESSOR CHRISTOPHER YUKINS

It would be difficult to find a more qualified expert in the field of federal procurement law and government contracts than Professor Yukins. The Lynn David Research Professor in Government Procurement Law at George Washington University Law School in Washington, D.C., Professor Yukins has practiced, advised, taught, researched, published, and testified before Congress in this area for more than three decades.

In its Motion to Exclude testimony, the Government does not challenge Professor Yukins's qualification as an expert through his extensive knowledge, skill, experience, training and education. In fact, the Government's complaint is that Professor Yukins is **too** qualified, "creating a substantial risk that the jury will substitute the expert's opinions for their own factfinding responsibility." As explained in greater detail below, Professor Yukins will not be asked to opine on any of the ultimate issues that are properly left to the jury to decide (i.e., whether Butler committed fraud by making <u>material</u> misrepresentations and whether Butler had the requisite <u>intent</u>

to defraud). Instead, Professor Yukins will provide critical testimony confronting Government accusations concerning complex and relevant issues that the jury would have no other way to properly evaluate.

The preliminary summary of Professor Yukins's testimony is attached as **Exhibit A.** His Rule 16(b), Fed.R.Crim.P. expert disclosure is attached as **Exhibit B.** The Government filed its Motion to Exclude prior to receiving Exhibit B – which was disclosed in a timely fashion consistent with the requirements of Rule 16(b) and Local Rule 88.10.[1]

Contrary to the Government's assumption, Professor Yukins is not relying solely on "experience," but also on his specialized knowledge, skill, training, and education. However, even if the Court finds that his proposed testimony is based solely or largely on his substantial experience, Professor Yukins's expert witness testimony satisfies the legal criteria to be admitted based on the witness's experience.

Professor Yukins's nearly forty years of experience in federal procurement, both as a lawyer (in private practice and as a Justice Department attorney) and as a professor, lead to his conclusions in this case. Professor Yukins has handled many federal terminations for convenience and – both as a professor and as a practicing lawyer – he has also worked with contracts and contractors to address cancellations of federal contracts.

Because cancellation can yield contractor recoveries that differ markedly from terminations for convenience, for decades (and nearly 25 years in the classroom) Professor Yukins has explained to contractors and students the differences between cancellations and terminations

---

[1] The Government also claims that Butler's summary expert disclosure, which complied fully with Local Rule 88.10, somehow should result in a "procedural default" because it did not meet the requirements of Federal Rule of Criminal Procedure 16(b)(1)(C). For reasons more fully explained in Butler's Response, the Government's claim has no basis in fact or law.

for convenience. That experience will provide a strong foundation for his testimony in this case, as Professor Yukins is intimately familiar with the norms, processes and federal procurement requirements that surround cancellations and terminations for convenience.

Professor Yukins's extensive experience thus leads to his conclusion that as "experienced parties working under the federal procurement system's well-established rules, conventions, contractual provisions and processes . . . both the Government and defendant Jasen Butler should have understood that when the orders at issue were cancelled under the SEA Card program, those orders were subject to the agreed cancellation charges – not the incurred costs recoverable under a termination for convenience." (Exhibit B, p.7) Professor Yukins' experience, grounded in many decades of work in federal terminations for convenience and cancellations, provides a robust basis for his opinions, and that experience is directly and reliably applicable to the facts at issue in this case.

The proposed testimony of Professor Yukins, though not scientific or technical, encompasses a specialized area of knowledge. Further, his testimony pertaining to federal procurement law and government contracts is undoubtedly beyond the purview of the average lay person.

Though the Government argues that his proposed testimony is irrelevant, the Government has repeatedly rested its theory of prosecution on an inaccurate statement of government procurement law. In the Indictment, the Government asserted: "*When a fuel order was cancelled or changed, the DOD component or other agency operating the vessel reimbursed the vendor for any costs the vendor incurred as a result of the cancellation or change.*" (D.E. 1 at 2) For the reasons fully explained in Professor Yukins's expert disclosure, this allegation is simply wrong. Without Professor Yukins's proposed testimony, there is no reasonable likelihood that the jury

will understand these critical issues and Butler will be denied his right to confront the Government's inaccurate accusations and present a complete defense.

## **LEGAL STANDARDS**

The legal standards articulated in <u>Daubert v. Merrell Dow Pharmaceuticals</u>, 509 U.S. 579 (1993) and <u>United States v. Frazier</u>, 387 F.3d 1244 (11th Cir. 2004) set forth the applicable framework to guide the Court's analysis of the admission of expert witness testimony.

"In determining the admissibility of expert testimony under Rule 702 of the Federal Rules of Evidence, the Court must consider whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reached his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." <u>See</u> <u>Frazier</u>, 387 F.3d at 1260 (quoting <u>City of Tuscaloosa v. Harcros Chems., Inc.</u>, 158 F.3d 548, 562 (11th Cir. 1998)).

In its Motion to Exclude, the Government attempts to limit the breadth of Professor Yukins's qualifications to solely his experience, incorrectly intimating that the Eleventh Circuit has categorically rejected the admissibility of testimony "based solely on the experience of an expert." In <u>Frazier</u>, the Eleventh Circuit stated clearly that:

> In fact, the plain language of Rule 702 makes this clear: expert status may be based on "knowledge, skill, *experience*, training, or education." (emphasis added). The Committee Note to the 2000 Amendments of Rule 702 also explains that "[n]othing in this amendment is intended to suggest that experience alone…may not provide a sufficient foundation for expert testimony."

<u>Frazier</u>, 387 F.3d at 1261.

The Eleventh Circuit in <u>Frazier</u> set forth the three-part analysis contained in the Committee Note to the 2000 Amendments of Rule 702. If a witness is "relying solely or primarily on experience," the witness must explain: (i) how that experience leads to the conclusion reached, (ii) why that experience is a sufficient basis for the opinion, and (iii) how that experience is reliably applied to the facts. <u>Id</u>. at 1261.

The Eleventh Circuit further explained that Rule 702's requirement that expert testimony "assist the trier of fact," is satisfied if the testimony "concerns matters that are beyond the understanding of the average lay person." <u>Frazier</u>, 387 F.3d at 1262 (citing to <u>United States v. Rouco</u>, 765 F.2d 983, 995 (11th Cir. 1985)). Expert testimony will help the trier of fact when it offers more than what lawyers for the parties can argue in closing arguments. <u>Frazier</u>, 387 F.3d at 1262-63 (citing to 4 <u>Weinstein's Federal Evidence</u> § 702.03)).

The admissibility standard set forth in <u>Daubert</u> is "a liberal one, and '[a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the *exception* rather than the rule.'" <u>Id</u>. at 1293 (citing to <u>United States v. Hankey</u>, 203 F.3d 1160, 1168 (9th Cir. 2000)).

"Rule 702 does not bar an expert from drawing conclusions in a specific case…[and] does not require that any inferences from the facts in the specific case be left to the jury." <u>Frazier</u>, 387 F.3d at 1294 (citing to <u>United States v. Boney</u>, 977 F.2d 624, 629 (D.C. Cir. 1992)). Thus, experts may "take the further step of suggesting the inference which should be drawn from applying the specialized knowledge to the facts." Fed.R.Evid. 702 advisory committee notes, 1972 Proposed Rules. This is true even if testimony "merely assist(s) the jury in interpreting the significance of the evidence." <u>Frazier</u>, 387 F.3d at 1294 (citing to <u>United States v. Brown</u>, 7 F.3d 648, 654 (7th Cir. 1993)). Indeed, "whether the specific expert testimony focuses upon specialized observations, the specialized translation of those observations into theory, a specialized theory itself, or the

application of such a theory in a particular case, the expert's testimony often will rest 'upon an experience confessedly foreign in kind to [the jury's] own.'" Frazier, 387 F.3d at 1294 (citing to Kumho Tire Co. v. Carmichael, 526 U.S. 137, 149 (1999)).

Federal courts will typically allow expert testimony which assists the trier of fact "in understanding complex transactions that lie outside the 'common knowledge of the average juror.'" United States v. Chaffo, 452 Fed.Appx. 154, 158 (3d Cir. 2011) (citing to United States v. Watson, 260 F.3d 301, 307-08 (3d Cir. 2001) and finding that complex mortgage transactions lie well beyond the common experience of the average juror); Fed.R.Evid. 704 advisory committee's note ("Rules 701 and 702…afford ample assurances against the admission of opinions which would merely tell the jury what result to reach…. They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria. Thus, the question, 'Did T have capacity to make a will?' would be excluded, while the question, 'Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?' would be allowed.").

In this case, Professor Yukins will not be called upon to provide opinions that usurp the jury's decisions on the ultimate issues of materiality and intent. Professor Yukins will neither opine that Butler's alleged misrepresentations were not material, nor will he opine that Butler lacked the requisite intent to defraud. Instead, Professor Yukins will provide testimony to assist the jury in properly evaluating the competing contract arguments to decide those ultimate issues, providing a framework for analysis of the complex procurement issues that jurors, as lay people, would not be able to understand on their own.  See United States v. Green, 698 Fed.Appx. 879, 880 (9th Cir. 2017) (holding that exclusion of proposed expert denied defendant his right to present a complete defense to the materiality element of wire fraud charges involving a mortgage lending scheme).

Lastly, Rule 403 requires exclusion of evidence only if "its probative value is substantially outweighed by [the] danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. §403. It is recognized, however, that Rule 403 "is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility." United States v. Lopez, 649 F.3d 1222, 1247 (11th Cir. 2011) (quoting United States v. Alfaro-Moncada, 607 F.3d 720, 734 (11th Cir. 2010)).

## **ARGUMENT**

**A. The Government mischaracterizes the proposed testimony and misunderstands how the proper contextual analysis of Professor Yukins's opinions demonstrates clearly their relevance to defend, challenge, and contest the Government's evidence and theory of prosecution.**

The Government's Motion to Exclude presents multiple arguments in support of its position. Those arguments will be individually addressed below. The Government's arguments fundamentally misconstrue the purpose and consequence of the expert witness testimony.

**1. The Government argues that the proposed testimony is irrelevant because Butler "seeks to use Professor Yukins's testimony as a springboard to argue that the Government *knew* Defendant made his profit by overcharging the government for ancillary fees when contracted were canceled, and assented to that business model by paying the inflated ancillary fees (as opposed to exercising its authority to demand more rigorous documentary proof of his expense beyond the fraudulent invoices he submitted." (D.E. 50 at 60)**

That is not what Professor Yukins will testify to, and not how federal procurement works. Professor Yukins will not opine whether or not the Government "knew" how Butler "made his profit." What the Government knew or did not know about Butler's business model is irrelevant. However, the Government's characterization that Butler overcharged for ancillary fees evinces a lack of understanding of the basic contractual relationship between Butler and the Government in this case. Butler only charged the Government **what the Government agreed to pay pursuant**

8

**to the binding terms of the contract.** Professor Yukins will not opine that the Government assented to what the Government mischaracterizes as Butler's "business model." Professor Yukins's opinion is that the Government had no legal authority, pursuant to the contract terms and applicable federal regulations, to demand ANY documentary proof of Butler's expenses because Butler's expenses (cost experience) were irrelevant. His expenses were irrelevant because the Government did not invoke the termination for convenience clause in the agreement – and even if the Government had – the specific cancellation terms of the contract took precedence over the termination for general convenience clause.

2. **The Government argues that "the mere fact that the Government, as a matter of procurement law, could have rejected a term in Defendant's bids – that 'special conditions' would apply to ancillary charges if there was a cancellation – is improper victim blaming." (Id.)**

This is a nonsensical argument. The relevance of this testimony is not to "victim shame" the Government for its failure to reject the special conditions of Butler's bids. The object of this testimony is to establish – contrary to the Government's theory of prosecution and the general allegations contained in the Indictment – that the special conditions for payment of ancillaries, evaluated and accepted by the Government during the bidding process, were the applicable contract terms that entitled Butler to be paid what he received (i.e., the firm, fixed-price for cancellation and ancillary charges).

Improper "victim blaming" is testimony and argument that it was the Government's fault for not detecting that the invoices were altered before paying them. No such testimony or argument will be presented. Testimony that properly establishes that Butler was entitled to the money he was paid is relevant to challenge and contest the materiality and intent to defraud elements of the charged offenses. Evidence that Butler was entitled to the money he was paid, based on a proper application of the contract terms and conditions, can render any misrepresentations regarding his

9

"cost experience" immaterial and refute the allegation that he intended to cause loss or injury to the Government.

3. **The Government mischaracterizes the defense and testimony by arguing, "Defendant clearly aims to argue that he believed the government's acceptance of the 'special conditions' gave him the right to overcharge on ancillary charges amounts, and that the Government is at fault for not seeking greater clarity before accepting the bids." (<u>Id</u>. at 6-7)**

The Government's argument misses the mark again. It is not Butler's subjective "belief" that is at issue. Instead, the proposed testimony will establish objectively, based on the contract terms and conditions, that the ancillary charges owed by the Government were whatever they voluntarily agreed to pay based on the terms of the contract they agreed to. In that proper context, Butler did not "overcharge" ancillary amounts – he charged the applicable firm, fixed price fees that were proposed in his bid quote and accepted by the Government.

The evidence at trial will establish that the Government evaluated and accepted Butler's proposed terms ("special conditions") during the open market bidding process. Though the Government may now regret agreeing to terms that later turned out to favor Butler, that regret does not transform a lawful contract into a criminal act. At most, it makes the Government guilty of making a bad bargain[2]. The Government had no interest in Butler's cost experience when it saved the Government money; they only began to care when it started to cost them money.

---

[2] Butler's company contracted and completed roughly 1,200 fuel orders for the Government between 2015 and 2024. The Government regularly received low-cost fuel while paying agreed-upon ancillary fees without incident. When the Navy and Coast Guard vessels arrived at the agreed-upon location at the agreed-upon time, and accepted the agreed-upon amount of fuel, they received low-cost fuel as contracted. The indictment references only 25 of those 1,200 orders to complain about fees that they agreed to when accepting Butler's bid quote but later contested payment as required by the contractual terms.

**4.** **The Government illogically states that "there is no evidence the government *knew* Defendant would fabricate records to support ancillary charges." (Id. at 7)**

This statement by the Government makes no logical sense. The proposed expert witness testimony will clarify that Butler's cost experience was irrelevant to the payment process, and thus, provide a framework for the jury to find that his alleged misrepresentations regarding that experience were not material. If the Government had properly noticed and invoked the Termination for Convenience clause in the contract, ONLY THEN would Butler's costs have been relevant. And the unrebutted evidence at trial will be that they did not.

**5.** **The Government further argues that Butler "should not be permitted to use Professor Yukins's testimony about the legal framework of the contracts as a means to argue that Defendant believed he had a license to submit fabricated documents in pursuit of reimbursement for expenses he knew he did not actually incur." (Id. at 7)**

At the risk of sounding like a broken record, this assertion by the Government only further highlights the critical importance and admissibility of Professor Yukins's proposed testimony. Everything in the above-quoted sentence is completely wrong. Neither Butler nor Professor Yukins will ever claim that he "had a license to submit fabricated documents." Instead, the proposed testimony will help disprove that the alleged misrepresentations Butler made about his cost experience were material because the Government owed him the full contract price pursuant to the applicable contract terms.

The Government, in support of its mischaracterization of the defense, again repeats its incorrect allegations. Butler was not "pursuing reimbursement for expenses he knew he did not actually incur." Butler was pursuing payment for what he was lawfully owed based on the applicable contract terms. Professor Yukins will clarify that it was the **Government who misled Butler** when it demanded proof of his costs for reimbursement when no such proof was required.

6.  **The Government argues that Professor Yukins's status as an esteemed law professor will "make matters worse," and create a "substantial risk that they jury will substitute the expert's opinions for their own fact-finding responsibility in determining whether the Defendant committed wire fraud." (Id.)**

Here, the Government complains that Professor Yukins is **too qualified.** His testimony, however, will be presented to clarify and rebut the erroneous allegations in the Indictment and the incorrect lay witness testimony the Government plainly intends to elicit regarding the application of contract terms and the payment process. Specifically, his testimony will clarify: (i) the absence of any requirement for cancellation and ancillary fees to be incurred by Butler, and (ii) the absence of any requirement for Butler to prove he incurred and paid those fees (i.e., they are not "reimbursed" costs). This testimony can <u>only</u> come from Professor Yukins and not through cross examination of lay witnesses for the Government, many of whom are on record parroting the same misinformation contained in the Indictment and pleadings.

Without the proposed testimony, the jury will lack the necessary framework to accurately evaluate the evidence and fulfill its fact-finding duty. That duty includes determining if Butler's alleged misrepresentations were material and whether the Government can prove beyond a reasonable doubt that that he had the requisite intent to defraud. The proposed testimony will provide the proper framework to permit the jury to critically analyze the relevant facts and apply them correctly to the Court's instructions on the law.

7.  **The Government's argument incorrectly equates "the scope of the expert testimony at issue here" with the testimony excluded in *United States v. Javat*, where this Court precluded a lawyer from testifying as an expert on customs laws and regulations in a fraud case.**

The Government's attempt to invoke this Court's prior ruling excluding completely different expert testimony regarding completely different issues in *United States v. Javat, et al.*[3] is

---

[3] This matter was referred to in a prior Government pleading as *United States v. Luis Alberto Soto*.

as transparent as it is misplaced. Even a cursory comparison of the allegations and issues presented in *Javat, et al.* and the instant case exposes the significant differences in issues presented to the Court.

In Javat*, et al.*, the excluded expert testimony concerned the defendant's compliance—or lack thereof—with Customs and FDA requirements. The Government's motion to exclude (ECF No. 351) argued that the proposed testimony addressed matters introduced solely by the defendant at trial, rather than issues central to the Government's own theory of prosecution. In sharp contrast, the proposed testimony at issue here directly **rebuts specific allegations contained in the Indictment** and the Government's repeated misinterpretation of **the same contractual provisions** underlying its case.

The Government's fear of Professor Yukins's truthful and accurate testimony clarifying the application of contract terms created by the SEA Card® program is palpable. Their fear is that the jury will see the case for what it is: the Government not liking the outcome of the deal they struck, changing the rules, and then blaming Butler for the problem they created.

In its Motion to Exclude, the Government raised specific objections to Butler's summary disclosure, often misstating Professor Yukins's proposed testimony. Butler responds directly to each:

1) **"Professor Yukins will testify that by accepting Defendant's bids, the government stipulated it would be liable for 'special conditions...and other ancillary charges' imposed by Defendant if the government canceled a fuel order." (Id. at 9)**

**Irrelevant/Blames the Victim. What the government agreed to does not help the jury evaluate whether the Defendant later defrauded the government while seeking reimbursement payments based on fraudulent invoices to justify expenses he did not incur.**

Butler addressed this objection earlier in his Response but cannot overstate the inherent absurdity of the Government's argument: Testimony that establishes what the Government lawfully agreed to pay Butler is irrelevant.

The Government is terrified of this truthful and accurate testimony because what the Government agreed to pay is what Butler was lawfully owed. And, if he was lawfully owed the money, then the invoices he submitted were not to "justify expenses he did not incur," and the alleged misrepresentations were arguably not material. The decision to pay the firm, fixed-price fees was made by the Government at the time of accepting Butler's bid. There was no subsequent "decision" to be made, as his cost experience was irrelevant.  How can holding the Government to the contract terms they agreed to be reimagined as "blaming the victim?" The argument makes no sense because the Government was not a victim – other than of their own bad business decisions.

2) **"The government could have 'assess[ed] the quotes reasonableness before the contract award,' and still accepted the quotes, which included 'special conditions' attached to ancillary charges in the event of cancellation." (Id.)**

**Irrelevant/Blames the Victim. The government's rights under the FAR before accepting Defendant's fuel orders are not relevant to whether the Defendant intended to defraud the government. Defendant seeks to argue that the Government turned a blind eye to his fraud scheme by failing to exercise rights that could have identified the scheme from the start. Their failure to do so, Defendant may claim, shows they knew what was going on. This is victim blaming.**

Again, Butler is not arguing that the Government "turned a blind eye to his fraud scheme." The proposed testimony will provide a framework for the jury to find that there **was no scheme to**

defraud and most importantly, Butler **had no intent to defraud**. The evidence at trial will establish that Butler proposed terms, the Government evaluated those terms, accepted them, and then tried to change the rules when the terms no longer favored them.

3) **"Federal Acquisition Regulation (FAR) required the government, when it canceled the contracts, to give formal notice, 'launch a structured negotiation process,' and pay Defendant's 'reasonable contractor charges that can be demonstrated to the satisfaction of the Government.'" (Id.)**

   **Irrelevant/Blames the Victim. The testimony suggests that Defendant's receipt of fraud proceeds is proof that the government thought ancillary charges were reasonable and demonstrated to the Government's satisfaction.**

The Government either misunderstands or is purposely misrepresenting the proposed testimony in this area. Professor Yukins's proposed testimony, in the proper context, is that the FAR provision **cited by the Government in support of its position**[4] "required the Government to give formal notice **of a termination of convenience** to launch a structured negotiation process. No facts support the Government's providing the required termination for convenience notice." This testimony will directly clarify and rebut the Government's incorrect citation to the termination for convenience clauses of the FAR. It will also directly challenge and refute the Government's general allegations in the Indictment and its anticipated lay witness testimony that the FAR termination for convenience clause and procedure is the applicable and relevant contract term. Professor Yukins, in his summary and Rule 16 expert disclosure, fully and properly explained why the Government's reliance on that clause is wrong.

---

[4] In its prior Motion (D.E. 44, pages 6-7), the Government cited to the termination for convenience provisions contained in the contract in order to incorrectly state: "Defendant's claim that a firm fixed-price contract prevented the military from cancelling at any price other than the full contract price is not the law. *See* FAR 13.302 & 12.403(d)(1) (establishing that for contracts for goods, when the government cancels, contractors are only entitled to recoup losses and be paid for work already done)."

4)  **"Under the FAR, the government could have demanded 'certified claims in support of disputed charges' and/or 'take[n] measures regarding Butler's responsibility.' The fact that the government did not do so shows either it was negligent in not identifying the fraud scheme or it tacitly endorsed Defendant's conduct." (Id. at 10)**

**Same response as to claim three, *supra*. Moreover, the testimony calls for an improper lay opinion. Professor Yukins is not capable of testifying about what government personnel thought about the veracity of the invoices it received from the Defendant, so the fact that the FAR gave the Government a dispute mechanism is a non sequitur. And Professor Yukins is not qualified to give an opinion when it comes to auditing procedures – he is not and has not even been, for example, a federal contracting officer.**

First, the Government misrepresents Professor Yukins's testimony in its Motion to Exclude. Professor Yukins **never** stated or opined that the Government's failure to invoke the termination for convenience clauses in the contract shows its "negligence" or "tacit endose[ment]" of Butler's conduct. The Government chose to cherry-pick language from Professor Yukins's summary to improperly frame this testimony and support its argument to exclude it. Professor Yukin's full testimony explains that the Government could only have "demanded certified claims in support of disputed charges" (as they did improperly here) IF they had invoked the termination for convenience process and procedure (which they did not).

The improper lay opinion complained of by the Government is a non sequitur because Professor Yukins has never offered testimony regarding what "government personnel thought." That Professor Yukins has not held the position of a federal contracting officer is immaterial. His testimony concerns the legal and procedural requirements for properly invoking the FAR termination for convenience clause, matters that fall squarely within his academic and professional expertise.

It is also interesting to note that the Government, for the first time in its pleadings, uses the term, "auditing procedures," to ostensibly describe its request for substantiating documents from

Butler – an assertion at odds with its reliance on the FAR termination for convenience clause repeatedly invoked in its pleadings and witness disclosures.

**B. The proposed testimony has substantial probative value and will clarify, not confuse, by guiding the jury toward an accurate understanding of the evidence and correcting the Government's faulty interpretation of the applicable contract terms and requirements.**

Professor Yukins's truthful and accurate testimony will clarify, not confuse. What is confusing is the Government's refusal to accept the basic contract law testimony and evidence. Butler did not "interpret" anything as a license to submit false invoices – he was entitled to be paid in accordance with the contract terms, including the special conditions the Government uses quotation marks to describe. Contrary to what its lay witnesses believe and have told the Government, the special conditions stipulated by Butler in his bid became enforceable contract terms when the bid was accepted by the Government, special conditions and all. Based on Professor Yukins's correct testimony, the jury can properly evaluate whether Butler had the requisite intent to defraud.

What is potentially confusing and misleading is the Government's myopic view of the case. The **correct** FAR provisions, and what they required the Government to do upon cancelling the contracts (pay Butler the full agreed-upon cancellation) is clearly relevant to whether Butler had a "fraud scheme" in the first place, whether his alleged misrepresentation about his cost experience were material, and whether he had the requisite intent to defraud. The proposed testimony exposes the Government's theory of prosecution as dead wrong, so they seek to exclude it so that they can present it unchallenged and unburdened by the truth.

The testimony of Professor Yukins pertains to the proper process surrounding payment of cancellation and other ancillary fees based on the proper application of the SEA Card program terms and conditions – subjects beyond the purview of the average lay person. When, as here, a

17

case involves highly technical legal issues, "courts and commentators have consistently concluded that expert testimony that ordinarily might be excluded on the ground that it gives legal conclusions may nonetheless be admitted." United States v. Offill, 666 F.3d 168, 175 (4th Cir. 2011) (citing to *Weinstein's Federal Evidence* §704.04[2][a] (2d. ed. 2003) that "[E]xpert testimony may be helpful if the case involves a specialized industry.").

Professor Yukins's testimony, however, will not infringe on the general rule that experts may not offer legal opinions or legal conclusions. None of Professor Yukins's opinions tell the jury how to resolve the material issues in this case: whether the Government can prove beyond a reasonable doubt that Butler's alleged misrepresentations were material and whether Butler had the requisite intent to defraud. None of Professor Yukins's opinions will conflict or infringe on the Court's instructions on the law and elements of the charged offenses. And none of Professor's Yukins's opinions will tell jurors the proper verdict to reach. As such, the proposed testimony's considerable relevance is not substantially outweighed by the risk of unfair prejudice.

### C. The Government's assertion that Butler's summary expert disclosure fails to satisfy the applicable rules is unfounded, and its request for procedural default is made without any basis in fact or law.

On October 15, 2025, within hours of the Court's denial of Butler's Unopposed Motion to Continue Trial, Butler retained Professor Christopher Yukins as his expert. The initial case materials for Professor Yukins to review were overnighted to him on October 20, 2025. That same day, the Government sought a commitment from Butler to "exchange our initial summary by Wednesday (October 22)? And we can make the more robust exchange 21 days before trial per the rule (let's say Nov 10?)." In response, Butler explained that the October 22nd date was impossible. On October 24, 2025, Butler committed to making best efforts to provide the initial summary expert disclosure by Friday, October 31st. On October 27, 2025, the Government filed its Motion

to Compel Defense Discovery by November 10, 2025 (D.E. 40). In its motion, the Government asked the Court to order Butler to comply with the expert disclosures laid out in the Local Rules by November 10, 2025.

On Monday, November 3, 2025, Butler served the Government with his Summary of Expert Witness Christopher Yukins by email. On Friday, November 7, 2025, three days before the applicable procedure rules required the "more robust" Rule 16(b) expert disclosure – and three days before the date the Government requested this Court to order its production, the Government filed the instant Motion and claimed that Butler's "paltry expert disclosure" failed to "meet the requirements of Rule 16(b)(1)(C)" and should result in "procedural default."

Based on the express communication between the parties, Butler's good faith service of his expert summary within two weeks of retaining Professor Yukins, and the Government's own request to order Butler to provide his expert disclosure by November 10, 2025,[5] the Government's claim of procedural default has no basis in fact or law.

### CONCLUSION

For all the reasons set forth above, the Government's Motion to Exclude ignores the actual substance of Professor Yukins's proposed testimony, misconstrues the applicable legal standards, and seeks to prevent the jury from hearing evidence that directly rebuts core allegations in the Indictment. Professor Yukins's testimony is relevant, reliable, and essential to Butler's right to confront the Government's accusations and present a complete defense on the materiality and intent elements the Government must prove. Because the proposed testimony will assist—rather

---

[5] Butler served his Rule 16(b) expert disclosure on November 10, 2025.

than mislead—the jury in understanding complex procurement processes central to this case, the

Motion to Exclude should be denied.

Dated: November 18, 2025

**GOLDBERGER WEISS, P.A.**
1555 Palm Beach Lakes Boulevard
Suite 1400
West Palm Beach, Florida 33401
Tel: (561) 659-8300
Fax: (561) 284-8938
Email: jason@goldbergerweiss.com


/s/JASON S. WEISS, ESQ.
Florida Bar No. 0096040
Attorney for the Defendant

**BRUCE A. ZIMET, P.A.**
1555 Palm Beach Lakes Boulevard
Suite 1400
West Palm Beach, Florida 33401
Tel: (561) 508-7741
Fax: (954) 760-4421
Email: BAZ@BruceAZimetLaw.com


/s/ BRUCE A. ZIMET, ESQ.
Florida Bar No. 0225053
Attorney for the Defendant

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 18, 2025, undersigned electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of Florida by using the CM/ECF system. Undersigned certifies that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

**GOLDBERGER WEISS, P.A.**
1555 Palm Beach Lakes Boulevard
Suite 1400
West Palm Beach, Florida 33401
Tel: (561) 659-8300
Fax: (561) 284-8938
Email: jason@goldbergerweiss.com

/s/JASON S. WEISS, ESQ.
Florida Bar No. 0096040
Attorney for the Defendant

**BRUCE A. ZIMET, P.A.**
1555 Palm Beach Lakes Boulevard
Suite 1400
West Palm Beach, Florida 33401
Tel: (561) 508-7741
Fax: (954) 760-4421
Email: BAZ@BruceAZimetLaw.com

/s/ BRUCE A. ZIMET, ESQ.
Florida Bar No. 0225053
Attorney for the Defendant