UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CR-80093-MIDDLEBROOKS

UNITED STATES OF AMERICA

v.

JASEN BUTLER

                **Defendant.**

_____/

**UNITED STATES' REPLY BRIEF RE: [44] MOTION IN LIMINE TO PRECLUDE DEFENSES BASED ON THE FEDERAL ACQUISITION REGULATION**

      This case is about fraud, forgery, and money laundering—the crimes charged in the Indictment. It is not a contract dispute. Defendant seeks to use the Federal Acquisition Regulation (FAR), found in Title 48 of the Code of Federal Regulations, to raise irrelevant contract arguments and confuse the jury. Neither the facts nor the law support making the FAR an issue here.

      Defendant claims that, under the FAR, he was "legally entitled" to the money he got from his fraud scheme from the moment he entered a fuel contract with the military. Resp. Br. at 6. But this argument elides a crucial point that renders the FAR-based argument both irrelevant and unfairly prejudicial: Defendant doctored invoices to extract the payments through lies. As Defendant repeatedly concedes in his Response to the Government's Motion to Exclude Improper Defenses, ECF 61, the military would not pay Defendant unless he proved that his fees were to recuperate costs he actually incurred. *See* Def. Resp. to Mot. to Exclude Improper Defenses (unredacted version) at 5 & Exs. A, B. And in response to the refusal to pay, Defendant did not pursue lawful redress, such as lodging an appeal or filing a lawsuit for breach of contract. He faked invoices instead. That conduct fits squarely within the definition of "injury" under the fraud statute:

1

obtaining "'property which [the victim] would not otherwise have parted with upon the terms he is thus induced to accept.'" *See Kousisis v. United States*, 145 S. Ct. 1382, 1394 n.5 (2025) (citation omitted). The framework Defendant sets forth—requiring the Government to prove an injury beyond deprivation of money or property—is unsupported by any legal authority.

The deficiencies in Defendant's proffered trial defense do not end there. Leaning heavily on the purported distinction between "fixed-price" and "termination for convenience" provisions under the FAR, Defendant lays bare his intent to reduce this criminal case to a contract dispute. But as the Government established in the Motion, robust authority precludes precisely such a "claim of right" as a defense to wire fraud. *See* Gov't Mot., ECF 44, at 3-5. What's more, Defendant lets slip his plan to use the FAR to promote jury nullification by claiming "that the Government . . . [should have] file[d] a civil complaint or pursue[d] a regulatory dispute" and "is seeking to convict and potentially incarcerate" him over a disagreement about the FAR. Resp. Br. at 12. The Court should grant the Government's Motion and exclude discussion of the FAR at trial to preclude this type of improper argument.

## ARGUMENT

**1. The FAR is irrelevant because Defendant did not attempt to enforce any contract with the Government.**

Government contracting regulations are irrelevant to this case because the Defendant did not contend at the time of the events in question that he was entitled to be paid regardless of his actual expenses, nor did he otherwise attempt to enforce a contract. If Defendant believed that the Navy and Coast Guard owed him money, he was free to lodge an appeal or file suit in the Court of Federal Claims. Instead, Defendant falsified invoices, adopted a fake identity, used a friend's company as a front, and lied repeatedly. Defendant never suggested to the military that it should pay him regardless of whether he himself had been charged cancellation fees. Instead, he chose to

lie to the military, falsely claiming suppliers had forced him to pay for the fuel. *See, e.g.,* Ex. 1 (Defendant: "Morning sir. **I know these charges are not ideal or fair but please understand I had to pay them. I don't agree with it but if they don't get paid I'm unable to operate.** Please sir have these charges approved in the system so we can close this out.") (emphasis added). By falsifying invoices and lying about his expenses rather than pursuing a contract dispute, Defendant committed criminal fraud. *See, e.g.*, *United States v. Guidi*, 141 F.4th 435, 449 (2d Cir. 2025) ("While [lying] might 'often be much easier than pursuing legal remedies through civil actions in court, and would guarantee success as long as the misrepresentation remained undiscovered,' our law does not 'encourage people to lie to obtain benefits rather than pursue their rights in civil actions. . . . Such controversies may be resolved by civil suit or settlement, but cannot be won by using lies and deception.'") (quoting *United States v. Gole*, 148 F.3d 166, 168 (2d Cir. 1998)). Defendant does not—because he cannot—argue that he pursued the contract claims he now seeks to inject into his criminal trial.

Furthermore, Defendant has exposed the irrelevance of the FAR to this case. In his Response, after pages of regulatory discussion about firm fixed-price contracts, Defendant ultimately asserts only that "specific cancellation provisions . . . take precedence over the termination for convenience provision." Response Br. at 6. In other words, Defendant's position is that language he included in the fuel quotes submitted on the SEA Card system entitles him to reimbursement. Even if one were to accept Defendant's interpretation of the FAR, the real issue would be the content of Defendant's communications with the military, not the interplay of obscure provisions of a complicated regulatory scheme. Defendant does not need to rely on any FAR provisions to make this argument.

3

Defendant also suggests that he is entitled to introduce the FAR because he anticipates the Government will characterize this as a termination for convenience. *See* Resp. Br. at 4-5. But that is a strawman. The Government has raised termination for convenience only in response to Defendant's own reliance on the FAR. Defendant cannot introduce regulatory provisions merely to rebut an argument the Government is not making in the first place. The Government's position at trial—unchallenged by Defendant—is simply that the military would not have paid Defendant without invoices. This is a factual description of how these transactions worked, not a legal argument grounded in contracting regulations, and it is sufficient to establish materiality. Indeed, if the FAR entitled Defendant to payment regardless of his actual expenses, he would have had no need to submit falsified invoices and lie to the military. The Court should therefore exclude mention of the FAR entirely.

**2. Defendant's reliance on precedent specifically overruled by the Supreme Court's decision in *Kousisis* underscores why his purported defenses should be excluded as irrelevant.**

"[C]ourts have **uniformly** held that a claim-of-right is not a defense to . . . fraud." *United States v. Guldi*, 141 F. 4th 435, 445 (2d Cir. 2025) (emphasis added) (citation omitted). Defendant has implicitly conceded this point by relying on overruled legal precedent. For example, Defendant relies on *United States v. Watkins*, 42 F.4th 1278, 1282 (11th Cir. 2022) (citing *United States v. Takhalov*, 827 F.3d 1307, 1313 (11th Cir. 2016)), for the proposition that net economic loss is an element of fraud. Resp. Br. at 8. Even if this was the law in 2022, it has been abrogated by *Kousisis v. United States*, in which the Supreme Court held that a defendant commits wire fraud "by scheming to 'obtain' the victim's 'money or property,' regardless of whether he seeks to leave the victim economically worse off." 605 U.S. 114, 124 (2025).

Faced with *Kousisis*, Defendant relies on Justice Gorsuch's opinion to advance arguments that the Supreme Court flatly rejected in its majority opinion. *See* Resp. Br. at 8-9. While Defendant characterizes Justice Gorsuch as "concurring," it is important to note that Justice Gorsuch concurred only in part and in the judgment—because he *disagreed* with the majority on a significant issue, namely, whether net economic loss is an element of fraud. Though Defendant cites Justice Gorsuch in support of the idea that "[l]ies without injuries are not criminal frauds," *id.* at 8, and to invoke "the traditional benefit-of-the-bargain injury rule," *id.* at 9, the Supreme Court expressly rejected those ideas, explaining that "it was the deception-induced deprivation of property—not economic loss—that common-law courts generally deemed injurious," *Kousisis*, 145 S. Ct. at 1394 n.5.

Defendant attempts to distinguish the cases the Government cited in its opening brief by suggesting that they do not apply when a defendant is objectively correct about his claim of right to the funds. Even a brief glance at these cases shows that Defendant is wrong. *See* Gov't Mot., ECF 44, at 4-5. In *United States v. Martin*, for example, the Eighth Circuit was clear that "[e]ven if the company owed Martin the money, **as it probably did**, he was not entitled to obtain his money by the use of fraud." 798 F.2d 308, 311 (8th Cir. 1986) (emphasis added). In *Guldi*, the Second Circuit was explicit that the purpose of this rule is to prevent "self-help" even for potentially meritorious claims. *See* 141 F. 4th at 449. Fraud is still fraud regardless of whether one was arguably owed the money.

## **CONCLUSION**

Defendant did not argue to the military at the time of the events alleged in the Indictment that his contract or the FAR gave him the right to claim reimbursements for expenses he had not incurred. Nor did he sue the military for these expenses in the Court of Federal Claims. Defendant's

5

contract-based argument is merely a post-hoc justification for a criminal fraud scheme. In the wake of the Supreme Court's *Kousisis* decision, however, a claim of right is not a defense in this Circuit or any other. Delving into the intricacies of the FAR would be confusing, waste time, and enable Defendant to invite jury nullification by fanning outrage at the Government for supposedly bringing criminal charges over a contract dispute. The Government respectfully requests that this Court exclude all discussion of the FAR at trial.

Date: November 20, 2025                Respectfully submitted,

                                                      JASON A. REDING QUIÑONES
                                                     UNITED STATES ATTORNEY

By:    /s/ Elizabeth Young
        ELIZABETH YOUNG
        Assistant United States Attorney
        Court ID No. A5501858
        Elizabeth.Young@usdoj.gov
        United States Attorney's Office
        99 Northeast 4th Street
        Miami, Florida 33132-2111
        Tel: (786) 761-3153

ABIGAIL SLATER
ASSISTANT ATTORNEY GENERAL
ANTITRUST DIVISION

By:    /s/ Jonathan Pomeranz
        Jonathan Pomeranz
        Trevor Wilmot
        Haley Pennington
        Trial Attorneys
        U.S. Department of Justice
        Antitrust Division
        450 5th Street NW
        Washington, D.C. 20530
        S.D. Fla. Special Bar #A5503242
        (202) 316-2179
        jonathan.pomeranz@usdoj.gov

CERTIFICATE OF SERVICE

      I certify that on November 20, 2025, I filed the foregoing document with the clerk of the court using the CM/ECF system and by this means served all parties.

/s/ Jonathan Pomeranz

Jonathan Pomeranz

# Exhibit 1

# Jasen Butler to Christopher Brown (US Coast Guard)

# March 6, 2023

# IMOS000047761

| | |
|---|---|
| From: | Jasen Butler <iomarine@att.net> |
| To: | Brown, Christopher M CPO USCG (USA) <christopher.m.brown2@uscg.mil> |
| Sent: | |
| Subject: | RE: [Non-DoD Source] Re: CGC STONE Puerto Madryn |

SKC,
 Morning sir.
I know these charges are not ideal or fair but please understand I had to pay them.
I don't agree with it but if they don't get paid I'm unable to operate.

Please sir have these charges approved in the system so we can close this out.

BR
Jasen

Jasen Butler
Intrepid Oceans Marine
P.O. Box 1750
Jupiter, Fl. 33458-1750
Mobile (561) 596-3748
Skype Jasen.Butler1

------------------------------------------------------------------------------------
This email is intended solely for the use of the addressee and may
contain information that is confidential, proprietary, or both. If this
information is shared with someone other than the intended
addressee the person/s responsible may be subject legal action.
If you receive this email in error please immediately notify the
sender and delete the email.
------------------------------------------------------------------------------------

On 2/28/2023 10:14 AM, Brown, Christopher M CPO USCG (USA) wrote:

Mr. Butler,


What I am proposing is a fairer ancillary fee. I propose $5,000.00 dollars per date change and an additional $5,000.00 to cover any administrative fees to include customs fees and overtime for a total of $15,000.00. The invoice provided was for fuel never delivered to the ship but labeled backhaul. To be backhauled the ship would have to refuse to take on the product. Also, you mentioned that the date changed 3 times, but the only date changes were from the 7th of Feb to the 12th of Feb, then again from the 12th of Feb to the 13th of Feb due to operational requirements. And because the original date change took place on or around the 2nd of Feb, there should have been more than enough time to provide the fuel order in full. Hopefully, you find this more equitable.


V/r,

SKC Christopher M. Brown

USCGC STONE (WMSL 758)

IMOS000047761

**From:** Jasen Butler
**Sent:** Friday, February 17, 2023 1:42 PM
**To:** Brown, Christopher M CPO USCG (USA)
**Subject:** [Non-DoD Source] Re: CGC STONE Puerto Madryn

Chris,

Please see the attached.

I uploaded everything into the system with the comment:

Ancillary Invoice.

The supplier is arguing that "...although the vessel could have handled more the constant date changing did not allow the supplier enough time to change schedules and deliver the fuel ordered. Originally the truck scheduled allowed the full delivery. The vessel changed the schedule 3 times."

They did however delete the change charge and other fees.

It's not as big as I thought it was going to be and I was able to get them down a bit. I hope this helps?

BR
Jasen

I hope

Jasen Butler
Intrepid Oceans Marine
P.O. Box 1750
Jupiter, Fl. 33458-1750
Mobile (561) 596-3748
Skype Jasen.Butler1

---
This email is intended solely for the use of the addressee and may contain information that is confidential, proprietary, or both. If this information is shared with someone other than the intended addressee the person/s responsible may be subject legal action. If you receive this email in error please immediately notify the sender and delete the email.
---

On 2/17/2023 10:39 AM, Brown, Christopher M CPO USCG (USA) <christopher.m.brown2@uscg.mil> wrote:

Jasen,

Please proceed with the ancillary cost. Also, as the contracting official I will need a full itemized invoice for the ancillary charges. Thanks.

V/r,

SKC Christopher M. Brown

USCGC STONE (WMSL 758)

IMOS000047763