## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-80093-CR-MIDDLEBROOKS

UNITED STATES OF AMERICA,

      Plaintiff,

v.

JASEN BUTLER,

      Defendant.

_____/

## ORDER ON GOVERNMENT'S MOTION TO PRECLUDE LEGALLY PROHIBITED AND FACTUALLY BASELESS DEFENSES

THIS CAUSE is before the Court upon the Government's Motion to Preclude Legally Prohibited and Factually Baseless Defenses, filed November 5, 2025. (DE 45). The Motion is fully briefed. (DE 74, DE 65). For the following reasons, the Motion is denied, but ruling is deferred on whether limitations should be placed on certain defense arguments and theories, as this requires an assessment of how the evidence is unfolding at trial.

Defendant Jasen Butler is charged in a 35-count Indictment alleging that he defrauded the United States military by overcharging the Coast Guard and Navy for expenses called "ancillary fees" associated with fuel order changes and cancellations. Defendant's scheme worked as follows: He owned and operated a fuel business, Independent Marine Oil Services, LLC ("IMOS"), that supplied fuel to United States military vessels. The itineraries of United States military vessels often change and result in cancellation of the fuel order. When a fuel order is cancelled or changed, fuel contractors like Butler are entitled to "ancillary fees." The Government asserts that these fees are intended as straight reimbursements of costs actually incurred by a fuel broker. Defendant submitted falsified documents to the military to make it appear as though he had incurred costs

related to the contract cancellations. For instance, he would note "CIA" (or cash in advance) on invoices to give the impression that he had already paid for the fuel before the military cancelled. He also inflated the up-front fuel prices he actually did pay. In fact, Defendant incurred no such costs, and so as a result of his falsification of documentation, the military paid him millions of dollars in ancillary fees, despite that Defendant was only out of pocket for relatively small amounts of money. Defendant submitted the false documents by email or via an online system called "SEA Card," which the military utilized to manage and award fuel contracts.

Defendant is alleged to have submitted false fuel invoices to the military between August 2022 and January 2024. The Indictment charges him with wire fraud, in violation of 18 U.S.C. § 1343 (Counts 1-27), forgery to obtain money from the United States, in violation of 18 U.S.C. § 495 (Counts 28-33), and money laundering, in violation of 18 U.S.C. § 1957 (Counts 34-35). According to the Government, Defendant's scheme resulted in profits of approximately $5 million over an 18-month period.

Defendant does not appear to deny that he in fact falsified documents and reaped significant profits through the ancillary fee process. He argues, however, that he was legally entitled to the fees paid to him under the terms of his contracts with the military. Defendant contends that when he submitted bids through the SEA Card system, he "routinely included special conditions regarding order cancellation and other ancillary charges in his quotations for awards of these orders." (DE 74 at 2-3). He says that the Government bound itself to Defendant's terms, rendering it liable for the charges regardless of costs Defendant actually incurred. Thus, Defendant seems to be asserting that he was merely exploiting vulnerabilities and loopholes in the Government's system, and that the Government's current attempt to characterize ancillary fees as pure

reimbursements is contrary to the terms and conditions that properly governed the SEA Card system at the time.

The Government seeks to preclude Defendant's anticipated arguments, asserting that they are improper victim blaming and/or an effort to put forward a factually unsupportable "justification" defense. The Government states that these ideas, if interjected into the case, will invite jury nullification. Defendant counters that the Government misunderstands the defense theories. Defendant argues that he has no intention of putting on evidence "blaming the victim," nor is he advancing "justification" as a defense.

This all boils down to how to properly characterize Defendant's aims and objectives in defending this case. The Parties seem to agree that any defense strategy that purports to point to Government negligence, or suggest that the military is at fault for any overpayment of ancillary fees, would constitute improper "victim blaming." Indeed, failure of fraud victims to detect or stop a fraud is generally not relevant. *See United States v. Svete*, 556 F.3d 1157, 1167 (11th Cir. 2009) ("A perpetrator of fraud is no less guilty of fraud because his victim is also guilty of negligence."). The Parties also agree that the evidence would not support a justification defense in this case. *See United States v. Vereen,* 920 F.3d 1300, 1310-11 (11th Cir. 2019) (to establish "justification" as a defense to criminal liability, a defendant must demonstrate that he committed the offense only as an unavoidable response to an immediate threat of death or serious injury, without having created the situation or having any reasonable legal alternative).

The question is whether the Defendant's anticipated theories and arguments touch upon these sorts of prohibited themes. This is a nuanced inquiry, and in my view it is not capable of a definitive determination at this stage. At trial, I will be able to evaluate the specific manner and

means by which Defendant seeks to challenge the Government's evidence. But I need to have a broader understanding of the context to render a fully informed decision.

Therefore I am going to deny the motion at this time. I do not agree with the Government's broad characterization of the Defendant's proffered evidence as wholly improper or baseless. According to the Defendant, he intends to introduce evidence regarding the SEA card system and normal commercial businesses practices within the industry. In doing so he intends to challenge the Government's claim that brokers were required to submit documentation for reimbursement. Defendant says there should never have been such a requirement under the SEA card system's then-existing terms, and that the Government cannot prove intent if Defendant lied in order to obtain a benefit that he was contractually entitled to anyway. I am not prepared to prevent Defendant from advancing this general argument, as I am not persuaded that it is an improper attempt to advance a "justification" defense, and it would appear to be relevant to counteract proof of fraudulent intent. And with respect to the Government's accusation of victim blaming, much will depend upon what evidence is admitted and how it is argued. Defendant will attempt to prove that "the Government owed him the money he was paid based on a correct interpretation of the contracts created by participation in the Sea card program," and that he was merely "work[ing] within the structure of the system created by the Government." (DE 74 at 5-6). This general line of argument does not strike me as victim blaming, and I intend to give Defendant some latitude. But if the argumentation veers into improper areas I will certainly entertain objections.

**CONCLUSION**

Accordingly, it is **ORDERED and ADJUDGED** that the Government's Motion to Preclude Legally Prohibited and Factually Baseless Defenses (DE 45) is **DENIED**. This denial is without prejudice to renew specific objections at the time of trial if the defense's presentation of

evidence or argument suggests that Defendant was justified in committing fraud, or that he should not be held criminally liable due to Government negligence.

      **SIGNED** in Chambers at West Palm Beach, Florida, this 15th day of December, 2025.


_____
Donald M. Middlebrooks
United States District Judge