**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 25-80093-CR-MIDDLEBROOKS

UNITED STATES OF AMERICA,

      Plaintiff,

v.

JASEN BUTLER,

      Defendant.

_____/

## ORDER ON GOVERNMENT'S MOTION TO EXCLUDE PROPOSED DEFENSE EXPERT

THIS CAUSE is before the Court upon two of the Government's motions. The first is its Motion to Preclude Proposed Defense Expert, filed November 7, 2025 (DE 50). The Motion is fully briefed. (DE 63, DE 67). The Second is its Motion in Limine to Preclude Defenses Based on the Federal Acquisition Regulation, filed on November 4, 2025. (DE 44). The Motion is fully briefed. (DE 73, 64). For the following reasons, the Motions are granted.

Defendant Jasen Butler is charged in a 35-count Indictment alleging that he defrauded the United States military by overcharging the Coast Guard and Navy for expenses called "ancillary fees" associated with fuel order changes and cancellations. Defendant's scheme worked as follows: He owned and operated a fuel business, Independent Marine Oil Services, LLC ("IMOS"), that supplied fuel to United States military vessels. The itineraries of United States military vessels often change and result in cancellation of the fuel order. When a fuel order is cancelled or changed, fuel contractors like Butler are entitled to "ancillary fees." The Government asserts that these fees are intended as straight reimbursements of costs actually incurred by a fuel broker. Defendant submitted falsified documents to the military to make it appear as though he had incurred costs

related to the contract cancellations. For instance, he would note "CIA" (or cash in advance) on invoices to give the impression that he had already paid for the fuel before the military cancelled. He also inflated the up-front fuel prices he actually did pay. In fact, Defendant incurred no such costs, and so as a result of his falsification of documentation, the military paid him millions of dollars in ancillary fees, despite that Defendant was only out of pocket for relatively small amounts of money. Defendant submitted the false documents by email or via an online system called "SEA Card," which the military utilized to manage and award fuel contracts.

Defendant is alleged to have submitted false fuel invoices to the military between August 2022 and January 2024. The Indictment charges him with wire fraud, in violation of 18 U.S.C. § 1343 (Counts 1-27), forgery to obtain money from the United States, in violation of 18 U.S.C. § 495 (Counts 28-33), and money laundering, in violation of 18 U.S.C. § 1957 (Counts 34-35). According to the Government, Defendant's scheme resulted in profits of approximately $5 million over an 18-month period.

Defendant does not appear to deny that he in fact falsified documents and reaped significant profits through the ancillary fee process. He argues, however, that he was legally entitled to the fees paid to him under the terms of his contracts with the military. Defendant contends that when he submitted bids through the SEA Card system, he "routinely included special conditions regarding order cancellation and other ancillary charges in his quotations for awards of these orders." (DE 74 at 2-3). He says that the Government bound itself to Defendant's terms, rendering it liable for the charges regardless of costs Defendant actually incurred. Thus, Defendant seems to be asserting that he was merely exploiting vulnerabilities and loopholes in the Government's system, and that the Government's current attempt to characterize ancillary fees as pure

reimbursements is contrary to the terms and conditions that properly governed the SEA Card system at the time.

In support of this argument, Defendant intends to employ the expertise of Law Professor Christopher Yukins. Professor Yukins's expertise extends to Government Procurement Law (DE 63-2 at 14). Centrally, as I read it, the defense intends to elicit testimony that would color the contractual relationship between the Government and the Defendant by explaining the terms and conditions of the contract. (DE 63 at 8, 10). The specific purpose of Professor Yukins's testimony would support the argument alluded to above: There was an explicit clause within the contract (the Termination for Convenience clause) that would have enabled the Government to review Butler's costs, but because they did not invoke that clause, no proof of costs for reimbursement was required. (*Id.* at 11).

I will grant the Government's Motion and exclude the testimony for several reasons. To begin, expert opinions amounting to legal conclusions are improper; interpreting and explaining applicable law is the role of the Court. Defendant argues that his proposed expert will "assist the jury in properly evaluating the competing contract arguments to decide those ultimate issues, providing a framework for analysis of the complex procurement issues" that jurors may struggle to digest. (DE 63 at 7). But as the Government correctly points out, "Professor Yukins's proposed testimony about the Code of Federal Regulations or principles of contract law … seek to usurp the Court's role of instructing the jury on the law." (*Id.*).

Second, I find that this testimony is irrelevant. It is irrelevant because testimony involving whether the Government invoked the right clause, and whether the contract permitted the Government to request the invoices simply cannot inform the state of mind that is central to the indictment. On this point, I find the Second Circuit's opinion in *United States v. Guldi*, to be

persuasive, albeit not binding, and I agree with how the Court framed the inquiry. 141 F.4th 435, 445 (2d Cir. 2025). The central dispute for a jury to determine is not whether the Defendant was entitled to the money; it is whether the misrepresentation made by the Defendant to the Government was made with the intention to induce the transfer of funds. *See id.* ("Even if Guldi believed that the money rightfully belonged to him, he knew Ditech only gave it back to him because they believed a lie and "a fraud is complete when the defendant has induced the deprivation of money or property under materially false pretenses." (quoting *Kousisis v. United States*, 145 S. Ct. 1382, 1394 n.5 (2025)); *see Kousisis*, 145 S. Ct. at 1394 (noting that "an 'injury' has occurred" that can support a fraud conviction "when a fraudster 'obtains from an owner ... property which he would not otherwise have parted with upon the terms which he is thus induced to accept' " (alteration adopted)). It seems to me, dovetailing with considerations of materiality, that the question for the jury is whether Defendant's actions were inspired by, and had a tendency to, influence the Government to provide the requested reimbursements.

With the issue properly framed, it follows that the proffered expert testimony is likely to mislead the jury rather than assist them in any issue they are called upon to decide. Professor Yukins's testimony would be expected to delve into the intricacies of Government procurement contracts, their general terms and applications in this case. But as stated above, this testimony attempts to shift the goalposts. It suggests that if the jury interprets the contract in a certain manner, then any future misrepresentation flowing from that interpretation is irrelevant. In reality, the relevance begins with the misrepresentation.

The Government has also moved to exclude a defense that is based on the Federal Acquisition Regulation ("FAR"). (DE 44). The reasoning, both for and against the Motion, closely mirrors the reasoning behind the Parties' beliefs concerning Professor Yukins's testimony. I will

grant the Government's Motion because reliance on the Federal Acquisition Regulation is also irrelevant. Once again, the Defendant contends that he "was objectively entitled to the money he was paid, and thus, any misrepresentations he made regarding his 'cost experience' were not material, did not go the 'essence of the bargain,' and that Butler had no intent to cause loss or injury to the Government." (DE 73 at 10). Invoking FAR seems therefore to be for the exact same purpose of proving the Parties' rights under the contract. But for the reasons stated earlier, this is not the relevant inquiry.

## CONCLUSION

Accordingly, it is **ORDERED and ADJUDGED** that:

1. The Government's Motion to Preclude Proposed Defense Expert (DE 50) is **GRANTED**.

2. The Government's Motion in Limine to Preclude Defenses Based on the Federal Acquisition Regulation (DE 44) is **GRANTED**.

**SIGNED** in Chambers at West Palm Beach, Florida, this 16th day of December, 2025.

Donald M. Middlebrooks
United States District Judge