UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-80093-CR-MIDDLEBROOKS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JASEN BUTLER,

    Defendant.
_____/

## ORDER ON DEFENDANT'S MOTION FOR ISSUANCE OF SUBPOENA

THIS CAUSE is before the Court upon the Defendant's Motion for Issuance of Subpoena, filed on December 16, 2025. (DE 80). The Government filed its Response on December 23, 2025 (DE 85), and Defendant filed his Reply on December 26, 2025 (DE 88). For the following reasons, the Motion is denied.

Defendant Jasen Butler is charged with defrauding the United States military by overcharging the Coast Guard and Navy for expenses called "ancillary fees" associated with fuel order changes and cancellations. Defendant brokered transactions with the Navy and Coast Guard to supply fuel to the military through his company, Independent Marine Oil Services, LLC ("IMOS"). The Government alleges that Defendant submitted falsified documents to the military to make it appear as though he had incurred costs related to contract cancellations when in fact he did not. The military utilized an online system called "SEA Card" to manage and award fuel contracts. The relevant time period of the charged conduct is August 2022 to January 2024.

The Defendant intends to invoke Rule 17(c) of the Federal Rules of Criminal Procedure. The Rule provides criminal defendants with a procedure to acquire documents for use as trial exhibits prior to the commencement of trial. The Defendant's specific subpoena request touches

on three categories. The *first* is requests for quotes ("RFQ"), bid information, all comments, fulfillment, and payment information (including any uploaded documents) for all IMOS SEA Card activity from January 2024 until the present as it relates specifically to the Defendant. (DE 80-1 at 1). On this category, Defendant maintains that "[t]he requested documents will help to establish Butler's continued good faith attempt to navigate Governmental procedures that DLA-E and military officials themselves appear not to understand." (*Id.*). The *second* category seeks RFQ, bid information, all comments, fulfillment, and payment information (including any uploaded documents) for every other SEA Card vendor from 2022-2024. (*Id.*). Here, Defendant suggests that this evidence will illustrate what, if any, supporting documents were provided by other vendors for approval and that such evidence may impeach testimony explaining that documented proof needs to be provided by the vendors and that has always been the practice before the Defense Logistics Agency ("DLA") would authorize a payment. (*Id.*). *Third*, Defendant seeks RFQ, bid information, all comments, fulfillment, and payment information (including any uploaded documents) for specific SEA Card orders listed in the Exhibit. (*Id.* at 2). These orders, he contends, involve near identical transactions by other vendors, including transactions that the Government alleged to be fraudulent. (*Id.*).

Fed.R.Crim.P. 17(c) governs the issuance of subpoenas duces tecum in federal criminal proceedings. It provides:

> A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys.

The scope, however, is limited both by the Rule itself and by caselaw interpreting its boundaries. Rule 17(c)(2) provides that a court may quash or modify the subpoena if compliance would be unreasonable or oppressive. In *United States v. Nixon*, the Supreme Court directed that a Rule 17(c) subpoena is proper where the proponent of a subpoena has demonstrated "(1) relevancy; (2) admissibility; [and] (3) specificity" of the requested materials. 418 U.S. 683, 699–700 (1974). The Eleventh Circuit has further explained that "the rule was not intended to provide an additional means of discovery for any party in criminal cases. Rather, the rule only reaches specifically identified documents that will be admissible as evidence at trial, provided that the application for the subpoena is made in good faith." *United States v. Silverman*, 745 F.2d 1386, 1397 (11th Cir. 1984).

Defendant's first request involves bid information from January 2024 through the present. Here, Defendant aims to show that IMOS was routinely paid cancellation and ancillary fees without submitting supplier invoices. Defendant suggests that this evidence directly rebuts the Government's claim that Butler knew such documentation was required and intentionally circumvented that requirement. He further argues that these documents will expose the inaccuracy of the Government's theory of prosecution that alleges it was "the military's practice," and not "any underlying contractual rights," that limited Butler to seeking only "reimbursement for costs incurred." (DE 80-1 at 1). According to the Government, this request is unnecessary because as of the date of their Response, they had turned over information up January 2025.[1] The Government

---

[1] It is not clear what information has been turned over at the time of this order. In his Motion, Defendant notes that [t]o date, the Government has only produced bid information up and until December 10, 2024, payment information up and until August 13, 2024, and uploaded documents limited to the charged offenses (25 of the nearly 1,200 orders IMOS fulfilled for the Government since 2015)." (DE 80-1 at 1).

also objects and argues that "[e]vidence of good conduct is not admissible to negate criminal intent" in light of the fact that the requested information falls "largely after [Defendant] was contacted by a federal agent." *United States v. Ahmed*, 73 F. 2023) (citation omitted); (DE 85 at 2).

I am not persuaded that the information sought is relevant. Defendant is seeking bid data related to his company for a time period falling outside the time period of the charged conduct, ostensibly to demonstrate good faith. But it is his intent during the relevant time frame that matters, not what he did thereafter. Defendant seems to want to prove that he stopped falsifying fuel invoices after the charged conduct. But in fraud cases, evidence of "good conduct" does not negate intent. *Ahmed*, 73 F.4th at 1384. Moreover, the idea that this this evidence could have any conceivable connection to Defendant's intent is significantly undermined by the fact that Defendant was contacted by federal agents in February of 2024, a fact that would have undoubtedly had a bearing on his conduct and his decision-making thereafter. I will deny the Defendant's motion as to this subpoena request for these reasons, and also because I find that producing these documents would impose a significant burden upon KHI according to the representations set forth in the Government's response brief.

As for his second request, the Defendant maintains that it is sufficiently "specific" because it identifies discrete categories of documents, limited timeframes, and defined datasets maintained by KHI, Inc. ("KHI") as the Government's contracted SEA Card administrator. (DE 88 at 4). The Government disagrees and labels Defendant's efforts as a fishing expedition. I agree. Butler's central goal is to show that that the military did not ask for proof of payment on cancelled orders. Yet, Defendant cannot reasonably specify the information contained or believed to be actually contained in the documents sought; instead, he merely hopes that something useful will come to

light. Reliance on the subpoena power cannot rest on such hopeful conjecture. Additionally, the breadth of documents sought is nothing less than a massive undertaking for KHI. Defendant requests RFQ, bid information, all comments, fulfillment, and payment information (including any uploaded documents) for every other SEA Card vendor from 2022-2024. Just because this "category" is separated from the category involving his own information during and after the time frame of the charged conduct does not make it meaningfully specific. This request therefore runs afoul of both the caselaw and the Rule itself as manifestly unreasonably.

Finally, Defendant's third request is twofold. Request 3A of the subpoena is a request for a specific bid by a different vendor on an uncharged bid outside the time frame of the indictment. The Government does not challenge this request, albeit nevertheless reserving a challenge to its admissibility at trial. (DE 85 at 3). Defendant's Request 3B, however, involves yet another different vendor who this time faced an allegation that it was submitting false claims to the DLA SEA Card program. The Government opposes this request, arguing that "[t]he vendor at issue is not charged in this case and has no relationship to [Defendant] as far as the Government knows." (*Id.* at 3, 4). Defendant's core contention here is that the evidence shows the resolution of an allegation, already disclosed by the Government in discovery, regarding whether a different vendor submitted supporting documentation for a cancellation charge and whether that charge was paid. (DE 88 at 7). I fail to see why a different vendor's allegedly fraudulent conduct committed outside the relevant time frame has any bearing on *Defendant's* state of mind. Defendant argues that the other vendor's transactions with the government call into question the materiality of the Government's requests for supporting documentation—a key part of the Defense's theory. But I have already ruled that Defendant's framing misunderstands the relevant question for the jury: it is not whether the Government's requests for documentation were wrong or unjustified as being

outside the bid contract terms, but instead whether Defendant's actions were inspired by, and had a tendency to, influence the Government to provide the requested reimbursements.

## CONCLUSION

Accordingly, it is **ORDERED and ADJUDGED** that The Defendant's Motion for Issuance of Subpoena (DE 80) is DENIED.

**SIGNED** in Chambers at West Palm Beach, Florida, this 6th day of January, 2026.

Donald M. Middlebrooks
United States District Judge