**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 25-80093-CR-MIDDLEBROOKS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JASEN BUTLER,

    Defendant.

_____/

**ORDER ON DEFENDANT'S MOTION FOR LIMITED PRODUCTION
OF GRAND JURY TESTIMONY**

THIS CAUSE is before the Court upon the Defendant's Motion for Limited Production of Grand Jury Testimony, filed on December 11, 2025. (DE 71). The Government filed its Response on December 18, 2025 (DE 84), and Defendant filed his Reply on December 23, 2025 (DE 86). For the following reasons, the Motion is denied.

Defendant Jasen Butler is charged with defrauding the United States military by overcharging the Coast Guard and Navy for expenses called "ancillary fees" associated with fuel order changes and cancellations. Defendant entered into contracts with the Navy and Coast Guard to supply fuel to the military through his company, Independent Marine Oil Services, LLC ("IMOS"). The Government alleges that Defendant submitted falsified documents to the military to make it appear as though he had incurred costs related to contract cancellations when in fact he did not.

The Defendant challenges the validity of the thirty-five-count Indictment and seeks Grand Jury Testimony as a basis to request dismissal of the Indictment. (DE 71 at 2). His central argument here is that the contract between the Parties was a "fixed-price contract," meaning that Defendant's

compensation, in the event of fuel delivery cancellation, was predetermined. Therefore, so the argument goes, the compensation was not dependent on any delivery cancellation documentation—leading to the desired conclusion that "the accuracy of any documentation, including invoices, following the cancellation of a fuel delivery contract, was not material to the cancellation payments made to [Defendant]." (DE 71 at 2). Pointing to a change in the Terms and Conditions of the SEA Card Program that explicitly incorporates a requirement to submit subcontractor invoices to prove charges were incurred and paid, the Defendant believes that the Government presented erroneous grand jury testimony—testimony relying on the new Terms and Conditions. Defendant rests this argument on the DCIS interview memorandum of Defense Logistics Agency-Energy (DLA-E) Contract Officer (CO) Francis Murphy ("Murphy") produced in discovery. (*Id.* at 6). The interview was taken one week before the Government obtained the Indictment and, in that interview, the Officer was showed SEA Card® Terms and Conditions that took effect on October 1, 2024. (*Id.* at 6; DE 84 at 2, 3).

The Government's response essentially boils down to an argument that Defendant selectively relies on testimony that occurred *after* the Officer was presented with the terms and conditions, rather than the various statements he made beforehand suggesting that receiving invoices was longstanding military practice. Accordingly, "[t]he language added to the SEA Card® Terms and Conditions in 2024 merely memorialized what the evidence shows was already the military's long-standing practice." (DE 84 at 6).

Whether relying on the court's inherent authority or Federal Rule of Criminal Procedure 6(e)(3)(C)(i)(I), a movant has the burden to show: (1) "that the material they seek is needed to avoid a possible injustice in another proceeding"; (2) "that the need for disclosure is greater than the need for continued secrecy"; and (3) "that [movant's] request is structured to cover only

2

material so needed." *United States v. Aisenberg*, 358 F.3d 1327, 1348 (11th Cir. 2004) (citing *Douglas Oil Co. of Cal. v. Petrol Shops Nw*, 441 U.S. 211, 222 (1979)). The Eleventh Circuit has also said that the "indispensable secrecy of grand jury proceedings' must not be broken except where there is a compelling necessity." *Id.* (citing *United States v. Procter & Gamble Co.,* 356 U.S. 677, 682 (1958). To show a compelling and particularized need, the private party must show "circumstances had created certain difficulties peculiar to this case, which could be alleviated by access to *specific* grand jury materials, without doing disproportionate harm to the salutary purpose of secrecy embodied in the grand jury process." *Id.* at 1349-50 (internal quotation and citation omitted).

Ultimately, the Defendant's goal is to challenge the factual validity of the Indictment. The Defendant suggests that that "the requested grand jury material is needed to avoid the possible injustice of the grand jury mistakenly indicting [Defendant] … [by] being misled that [Defendant's] invoices were material to the Government's obligation and decision to compensate [Defendant], as well as being misled that Defendant intentionally submitted invoices that were required for fuel delivery cancelation compensation." (DE 86 at 2). But there are several reasons why Defendant has not shown the compelling need to pierce the secrecy of the grand jury. First, access to the grand jury testimony does not bear on whether the allegations in the Indictment are erroneous as to material facts as the Defendant suggests, nor would it inform the meaning of the contract between the parties or the materiality inquiry that drives the Defendant's theory. If Defendant aims to emphasize his responsibilities under the contract, and the purported inability of the Government to request proof of costs, the testimony of the grand jury does not answer that question. At most, and in the best case scenario for Defendant, it might show that the Officer testified about terms and conditions requiring proof of reimbursement that did not exist at the time

3

Defendant committed the charged conduct, but instead terms that applied only afterwards. But even this would not warrant a finding that the indictment is invalid because the materiality inquiry must still be focused upon, as I have ruled elsewhere, that ultimate question is whether Defendant's actions were inspired by, and had a tendency to, influence the Government to provide the requested reimbursements. Second, Defendant's belief that the grand jury may have relied on the wrong applicable terms and conditions is belied by the fact that the interview testimony provides a sufficient basis to conclude that the government did not mislead the Officer by showing him the updated terms document. Take, for example, two of the Officer's comments from the interview. First, he notes that "[a] vendor like [Defendant] must provide some documents to be reimbursed fees, such as cancellation fees, and an invoice needs to be submitted or other documentation as proof." (DE 84 at 3). He also suggests, "If there is a fee incurred by the vendor, Murphy said that the U.S. Navy and or DLA does not trust the vendor word alone and proof must be given of the actual cost that was incurred by the vendor." (*Id.* at 4). Both statements were made by the Officer prior to being provided the terms and conditions, and both support the idea that it was longstanding military practice to request documentation. To the extent that the Defendant challenges the veracity of these claims or the Officer's memory, such issues are not dealt with by reviewing grand jury testimony; they are dealt with at trial on cross-examination.

Ultimately, I will not require production of the grand jury transcript because I do not think that the purportedly erroneous or misleading testimony undermines the viability of the indictment. Even if Defendant is correct about the manner in which the grand jury testimony played out, the materiality inquiry, when properly framed, makes it irrelevant whether the government was authorized to request documentation of proof of loss or not. The issue in determining whether probable cause existed to indict Defendant is not whether Defendant's acts could be considered

4

material under the terms of the contract, as Defendant suggests, but rather whether his actions were inspired by, and had a tendency to, influence the Government. Under this framework, the grand jury proceedings that Defendant suggests are "harmless beyond a reasonable doubt." *Beiter v. United States*, 2023 WL 1980773 at *3 (11th Cir. Feb. 14, 2023).

## CONCLUSION

Accordingly, it is **ORDERED and ADJUDGED** that the Defendant's Motion for Limited Production of Grand Jury Testimony (DE 71) is **DENIED**.

**SIGNED** in Chambers at West Palm Beach, Florida, this 7th day of January, 2026.

Donald M. Middlebrooks
United States District Judge